BOMGARDNER ET AL. V. ANDREWS.

1. **Evidence:** EXPERT TESTIMONY. There must be evidence tending to prove the matters stated in a hypothetical question to a witness testifying as an expert, to render it proper.

*Appeal from Linn Circuit Court.*

THURSDAY, APRIL 7.

THE appellants, as proponents, sought to have what purported to be the will of Peter Bomgardner admitted to pro-

bate. The appellee, as contestant, objected thereto on the ground the said Peter was not of sound mind at the time the will was executed. Trial by jury, verdict and judgment for contestant, and the plaintiffs appeal.

*J. J. Powell* and *J. B. Young,* for appellants.

*Blake & Hormel,* for appellee.

SEEVERS, J.—Doctor Mansfield was intruduced as a witness on the part of the contestant, and testified he saw the deceased
1. EVIDENCE: some fifteen days before the will was executed
expert testi-
mony. and he then discovered the deceased was different from what he had been. His "principal idea was that some person was circulating reports going to crush him, and deprive him of his liberty." Upon inquiry as to who it was the deceased responded that "he could not think of any body but a waif of a boy here."

Doctor Restine, a witness introduced by the contestant, was asked the following hypothetical questions.

Suppose a man would transact his business as a sane man, and as he was always accustomed to. do, and would deport himself with his neighbors in the customary manner when perfectly rational, but was laboring under the delusion that some one was slandering him and trying to deprive him of his liberty, would he be of sound or unsound mind on that particular subject?"

The proponents objected to this question on the ground it was misleading. The objection was overruled and the witness answered, "he would be unsound on the particular subject of his delusion, of course." Thereupon the contestant asked said witness the following question: "Would unsoundness on that particular subject affect his action touching any person that he supposed to be trying to deprive him of his liberty." To this question the proponents objected "because there is no claim he had any fear of his daughter Fanny."

Whereupon counsel for the contestant said they would so claim, and the court overruled the objection, and the witness answered: "It is my opinion it would influence his action toward the person."

Because of the action of the court just referred to a new trial was asked, which being overruled the alleged error in. allowing the questions aforesaid to be asked has been assigned as error.

It is claimed by counsel for the contestant there was evidence tending to show the deceased believed his daughter, the contestant, was trying to deprive him of his liberty and had been slandering him. To sustain this position the contestant relies almost exclusively on the evidence of doctors Mansfield and Carpenter. The evidence of the former bearing on this question has been stated, and clearly we think it does not so tend. On the contrary, the deceased seems then to have been under the impression it was some one else.

Doctor Carpenter testified he met the deceased about a week before he died and noticed he was much excited, and " asked him what the matter was, and he said, 'I have so much trouble I hardly know what to do with myself, I am afraid it will kill me. My daughter has gone back to live with that man again.' He made the remark, Andrews was a terrible man. I think he said Andrews was the damndest scoundrel he ever saw. He spoke bitterly against his son-in-law. There was no bitterness against his daughter, any more than a sense of wounded feeling. He felt hurt about it." The witness also testified the deceased was in his opinion of unsound mind upon the subject of " his family troubles—his daughter and son-in-law." We fail to discover in the foregoing anything which in the slightest degree tends to show the deceased thought his daughter was slandering him, or trying to deprive him of his liberty. Nor does the evidence tend to show the deceased thought his daughter was trying to injure him in any respect.

It is urged the contestant was the testator's favorite child,

and, as he disinherited her, the jury might because of such matters have inferred he believed she was trying to deprive him of his liberty and was slandering him. To this it may be said that a person has the right to dispose of his property by will as he sees proper, and the fact that he dis-inherits such a child is no evidence in and of itself, and alone, that he is insane or entertained a delusion in relation to such child. There must be evidence tending to prove the matters stated in a hypothetical question to make it proper. *Hurst v. C. R. I. & P. R. Co.*, 49 Iowa, 76.

For reasons which need not be stated, we do not deem it best to consider the other errors assigned.

REVERSED.