JANE E. ADAMS, Appellee, v. E. C. JUNGER, Appellant.

**Malpractice:** CONTRADICTORY INSTRUCTIONS. Where the court, in an
1   action for malpractice, took from the jury all question as to neg-
ligence of defendant in the treatment of the injury, and told them
that there was no evidence that failure of the broken bones to
unite, or that the condition of the limb or of the fracture, was due
to any negligence or want of skill on the part of defendant, sub-
sequent instructions in which the court submitted the question of
defendant's skill in diagnosing the injury and in allowing the
fractured part of the bones to remain in the flesh, producing bodily
pain and mental suffering, and also authorizing the jury to award
damages for pain and suffering during defendant's treatment of
plaintiff, were contradictory and conflicting.

**Same:** NEGLIGENCE: EVIDENCE. In this action for malpractice the
2   evidence is reviewed and held insufficient to authorize submission
to the jury of the question of defendant's negligence in his orig-
inal treatment of the injury, or in the use of appliances.

**Same:** INSTRUCTIONS. Where an action for malpractice was tried on
3   the theory of negligence in failing to discover a fractured bone
protruding into the flesh and causing pain, instructions that there
was no evidence of failure of the bones to unite or that the con-
dition of the injury was due to negligence of defendant, and that
if defendant did not use reasonable skill in diagnosing the injury
and allowed fractured bones to remain in the flesh, did not present
the case as tried in a manner to be understood by the jury.

**Same:** EVIDENCE. The evidence in this action is also reviewed and held
4   insufficient to authorize submission of defendant's negligence in
failing to discover a fractured bone protruding into the flesh and
in not preventing the pain resulting therefrom.

**Evidence:** NON-EXPERTS: HARMLESS ERROR. A non-expert witness
5   is not competent to testify in an action for malpractice that plain-
tiff suffered pain, or that she was afflicted with a certain disease;
but where defendant treated plaintiff for rheumatic pains his tes-
timony that she suffered such pain was harmless.

**Same:** EXPERTS: HYPOTHETICAL QUESTIONS. Hypothetical questions
6 put to an expert witness on his examination in chief must be
based on what the testimony proves or tends to prove.

**Same:** NEGLIGENCE: RECOVERY: INSTRUCTION. In this action for
7 malpractice, tried upon the theory that defendant was negligent
in not discovering that a fractured bone protruded into the flesh,
and in not relieving the pain resulting therefrom, plaintiff could not
recover unless there was evidence that such condition existed during
the time of defendant's employment, and prior to an operation by
another.

*Appeal from Monona District Court.*—HON. DAVID MOULD,
Judge.

WEDNESDAY, FEBRUARY 19, 1913.

ACTION for malpractice. Defense a general denial. Ver-
dict for plaintiff in the sum of $1,000 upon which judgment
was rendered, and defendant appeals.—*Reversed.*

*Wade, Dutcher & Davis,* and *C. E. Cooper,* for appellant.

*J. A. Pritchard* and *J. W. Anderson,* for appellee.

DEEMER, J.—The specific allegations of negligence were:

That the fracture of plaintiff, as set forth in plaintiff's
petition, was such a fracture as the ordinarily skillful physi-
cian and surgeon could readily and would have readily re-
duced. That the defendant failed to reduce the same, or, if
said fracture was reduced by the defendant, then the de-
fendant failed to properly care for and keep said fracture
in place by using proper appliances and care necessary to
keep said fracture reduced. That the defendant was care-
less and negligent and unskillful in failing to properly ex-
amine and discover the condition of said wound and fracture,
and allowed the same to remain in a fractured condition,
with the bone extending into the flesh, when the defendant
might, by using ordinary care and skill, have discovered
the condition of plaintiff and remedied the same. That the

defendant failed to properly examine said wound, or to discover the condition of the fracture, although warned by the plaintiff as to the condition of the same, in so far as she knew. That the defendant was negligent, careless, and unskillful, if, as a matter of fact, he reduced the fracture, in not so adjusting his bindings and other appliances in such a manner as to hold the fracture in place, and in not examining the plaintiff's wound and fracture and discovering its condition, and then using the proper remedies.

In submitting the case to the jury, the trial court thus stated the issues:

Plaintiff claims that the defendant was negligent in the treatment of plaintiff in this: That he failed to reduce the fracture, or, if said fracture was reduced, that he failed to properly care for and keep said fracture in place by using proper appliances and care; that he was careless and negligent in failing to properly examine and discover the condition of the fracture, and allowed the same to remain in a fractured condition, with the bone extending into the flesh, and the defendant, by using ordinary care and skill, might have discovered the condition of the fracture and remedied the same. That the defendant was further careless and negligent in not adjusting his bandages and other appliances in such manner as to hold the fracture in place, and in not examining plaintiff's wound and fracture. That the injuries suffered by the plaintiff, and herein complained of, were caused by the carelessness and negligence of the defendant, and not by reason of any carelessness or negligence of the plaintiff. . . .

After thus stating the issues tendered by the petition, the court charged as follows:

· Par. 4. Before the plaintiff can recover anything in this action, she must prove to you by a preponderance of the evidence: First. That the defendant was negligent in one or more of the particulars charged in the petition, as set forth in paragraph 1 of this charge. Second. That the negligence proven was the proximate cause of the injury of which plaintiff complains in her petition. Third. That she herself was free from negligence contributing to he injury complained of,

Par. 6. That plaintiff charges in her petition that the defendant failed to reduce her fracture, and failed to properly care for and keep said fracture in place by using proper appliances and care necessary to keep said fracture reduced. But you are instructed that the plaintiff has not introduced evidence sufficient to submit to the jury the question as to whether, in the original treatment of plaintiff, and in the use of the appliances which the evidence shows the defendant did use, there was any negligence on the part of the defendant; and this charge of negligence is withdrawn from your consideration, and you will not take the same into consideration in arriving at your verdict. And there is no evidence that the failure of plaintiff's fracture to unite, or the present condition of her limb and said fracture, are the result of any negligence or want of skill on defendant's part, and you cannot hold him responsible therefor.

Par. 7. The plaintiff charges that the defendant was negligent and unskillful in failing to properly examine and discover the condition of the fracture, and allowed the same to remain in a fractured condition, with the bone extending into the flesh, when he might, by using ordinary care and skill, have discovered the condition of plaintiff and remedied the same. And if you find from the evidence that plaintiff suffered a fracture of the femur, whereby the fractured parts were displaced, causing the limb to evert, and causing intense pain in the region of the fracture, and you further find that the defendant, in the exercise of the knowledge, care, and skill usually exercised by physicians and surgeons in similar localities in the treatment of like cases, should have discovered the displacement of the broken bones and adjusted the same, and failed to do so, then he would be liable in this action for any bodily pain and mental suffering caused by the failure to discover and adjust the displacement, and to which the plaintiff did not contribute by acts of carelessness or negligence on her part. But if plaintiff has failed to prove to you by a preponderance of the evidence that the pain and suffering of which she complains was caused by the displacement of the fractured parts, or if she failed to prove to you that the defendant, in the exercise of that degree of knowledge, skill, and care ordinarily exercised by physicians and surgeons in similar localities, should have discovered the displacement and adjusted the same, then the plaintiff can-

not recover in this action, and your verdict should be for the defendant.

Par. 8.   You are instructed that plaintiff can only recover, if at all, in this case for physical pain and mental suffering, if any, endured by plaintiff prior to the time Dr. Conn performed his operation, and only for such pain and suffering as is shown by the evidence to have been the proximate result of defendant's negligence and unskillfulness, if any, in failing to discover and adjust the displacement of the fractured parts.   Plaintiff cannot recover damages for any pain or suffering resulting from the fracture and the proper treatment thereof; nor can she recover for pain and suffering resulting from rheumatism; nor can she recover in this case for loss of time or decreased ability to perform labor.

I.   These instructions are complained of as being contradictory and conflicting, and as being fundamentally wrong on any theory of the case.   While it is difficult

1.  MALPRACTICE: contradictory instructions. to discover the theory which the court had in mind, it is apparent, we think, that the objections to these instructions are well founded.   The court took away from the jury the question of defendant's treatment of the fracture, and specifically said that there was no evidence that the failure of the bones to unite, or the present condition of the limb or of the fracture, was due to any negligence or want of skill on the part of the defendant. But in the next instruction the question of his skill in diagnosing the injury and in allowing fractured part of the bones to remain in the flesh, producing bodily pain and mental suffering, was submitted.   It is difficult to reconcile these instructions, save upon the theory that, while defendant's treatment was proper, he might at some time, by the use of ordinary care and skill, have relieved plaintiff from some of her suffering due to a misplaced bone, although he could not have reduced the fracture or secured a union of the bones.   These two theories are hardly consistent, unless it be as plaintiff's counsel contend in argument, that after he had concluded his treatments, he did not properly instruct plaintiff as to

the care of her limb, or did not properly examine it to see if any bones were then protruding into the flesh, producing pain which might have been alleviated by the use of proper care. This, however, was not the thought of the pleader in framing his petition, and no such specification of negligence is made.

Aside from this, the eighth instruction, which we have quoted, clearly allows the jury to award plaintiff damages for all pain suffered by her prior to the time a second operation was performed, by a Dr. Conn, to relieve her condition. This involves the idea that defendant's diagnosis and treatment of the case from the beginning might be found to have been improper, although the court expressly said in the sixth instruction that defendant properly cared for and kept the fracture in place by using proper appliances and care in keeping the same reduced, and that there was no testimony showing or tending to show that in the original treatment, or in the use of appliances, there was any negligence whatever. If the court had in mind the thought that defendant did not, in discharging plaintiff, properly direct her as to the care of the limb, or that he did not then examine her for misplaced bones, he should have instructed the jury that it could not allow for any pain or suffering occurring prior to the time that defendant was found to be negligent. In other words, if, as the court instructed, defendant was not negligent in his original treatment, he cannot be held for any suffering endured by plaintiff during the time this treatment continued; and, if held responsible for something occurring after this treatment ceased, he should only be held liable for such pain and suffering, if any, as resulted from his negligence at that time, and not for what might have been endured from the beginning. And, in any event, plaintiff cannot recover, unless she proves the negligence charged in her petition, and her damages must be limited to such as proximately arose from the negligence charged. These principles are very fundamental, and need no citation of authorities in their support.

II.  In view of a retrial, we shall consider some of the other errors assigned.  This necessarily involves a statement of some of the facts as disclosed by the record.

2. SAME: negligence: evidence.

Plaintiff is a married woman, and on the 11th day of January, 1911, she suffered a fracture of the neck of the femur of her left limb.  Just how it happened is not known.  Defendant, who is a physician and surgeon, was immediately called to treat the fracture, and arrived at plaintiff's house within an hour and one-half of the time she received her injuries.  He began his treatment immediately, applied splints, and, as the court said in its instructions, used proper appliances, and continued to treat his patient until May 29, 1911, when he made his last professional visit.  On June 5th plaintiff's husband called on defendant, paid his bill for services, and made no complaint of the treatment that had been given.  He did say, however, that he expected to call another doctor by the name of Conn; but he made no request of defendant to continue his treatment.  The relations between the doctor and his patient and her husband continued to be friendly; for defendant thereafter made a social call upon plaintiff, and also sent a stretcher down to her house, which was thereafter used in taking plaintiff to a hospital at Ida Grove.  After defendant's discharge, and some time during the month of June, a doctor by the name of Bowie made a social call upon the plaintiff; but she said nothing to him about her suffering or about the fracture.  On June 20th both doctors, Conn and Bowie, were called to examine the plaintiff, and they found her suffering great pain.  At the suggestion of one or the other, or both, plaintiff was taken to Dr. Conn's hospital at Ida Grove on June 24, 1911, and an X-ray examination was made, which resulted in a discovery of the fact that the fracture had not been reduced; that there was a nonunion of the broken bones; and that one end of the bone had extended up into the flesh for an inch or more, causing excruciating pain.  Upon this discovery being made, Dr. Conn pulled the leg

down and everted it, giving at least temporary relief. Plaintiff stayed at the hospital a day or two and then returned to her home, receiving no further medical attention. It was shown that during the time defendant was treating plaintiff, she (plaintiff) suffered pain, and, as this was thought to be due in part to rheumatism, defendant gave her medicine to relieve this pain, and did give her temporary relief; but all the doctors say that such a fracture as plaintiff received always causes great pain, and the trial court instructed, and as we think properly, that there was no testimony of any negligence on the part of the defendant in his original treatment, or in the use of the appliances, which he did in fact use.

The theory of the trial court in submitting the case can only be gathered from the instructions already quoted, and
3. Same: instruc- from the following remarks of the court, made
   tions.        in passing upon defendant's motion for a directed verdict. These were as follows:

By the Court: I don't think there is any evidence to go before the jury as to the negligence at the time of the setting of the limb. But as time goes on there was sharp pain, which was complained of, and, as I understand Dr. Conn's testimony, that he concluded from these very same symptoms that there was a nonimpacted fracture, and it should have been discovered, and that he did discover it. By Mr. Dutcher: I don't think that Dr. Conn said that. He said at the time he saw it there was a nonimpacted fracture, but he could not tell whether it was nonimpacted before or not. By the Court: I understand there was no change of condition from the time that Dr. Junger was discharged until Dr. Conn took charge of the case. By Mr. Dutcher: There is no evidence that they were the same. By the Court: I think the case should go to the jury on that one proposition, and if Dr. Junger, in trying to diagnose the case, should have believed that pain and suffering was caused by a nonimpacted fracture, and in the exercise of a reasonable care that he should have relieved that pain. By Mr. Dutcher: Is there any duty on the doctor to relieve that pain? The patient must suffer pain.

By the Court: .They must endure the pain that is necessary, but no unnecessary pain. By Mr. Dutcher: What evidence is there that it was the result of this man? By the Court: The evidence of Dr. Conn is that he reduced it, and there was immediate relief. I shall submit it to the jury on that one proposition. (Motion overruled, and defendant excepts.)

These remarks furnish the key, if any there be, to the solution of the questions presented. Therefrom we conclude that the court thought there was enough testimony to take the case to the jury upon the question as to whether or not defendant, in the exercise of proper care on his part, might not have discovered the fact that there was a bone protruding into the flesh, which might, by proper care, have been removed, and plaintiff relieved of the pain caused thereby. The difficulty here lies in the fact that this thought is not brought out in the instructions in such a way that the jury would understand it, and in the further fact that the evidence does not show whether the fracture was an impacted or nonimpacted one; fails to disclose the exact nature of defendant's treatment (that is, as to whether he used an extension or not), although the trial court squarely instructed that his treatment was proper; fails to show when the bone protruded itself into the flesh; and fails to show that plaintiff's suffering during the time she was being treated resulted from a protruding bone. All these things are left to the merest surmise or conjecture. It is true there was testimony as to this bone protruding on June 24th, but nothing to show that it was in that condition while defendant was treating the case, or as to when it in fact took place. The testimony from the experts clearly shows that the treatment for an impacted fracture of the neck of· the femur is quite different from a nonimpacted fracture at that point. In the one case no extension appliances are used, while in the other they are indicated. The trial court found that proper treatment was given and proper appliances used, so that whatever pain plaintiff suffered during the continuance of this treat-

4. SAME: evidence.

ment must have been due, if the trial court was correct in its instructions, either to the pain incident to the fracture itself, or to rheumatic pains; and for neither of these would defendant be responsible. The only proof which plaintiff has on this proposition is the condition in which the limb was found on June 24th, when the X-ray examination was made; but the experts say that this, in itself, is no proof of the condition at the time the injury was first received, or even at the time defendant made his last visits. Presumptions do not ordinarily relate backward. A condition, once shown, may be presumed to continue; but ordinarily from a condition once found no presumption is indulged that it has existed for any given time in the past. True such presumptions some time arise in virtue of the nature of the condition; but this arises from proof of other things in addition to present conditions; as its condition of permanency of progressiveness. Here there is no such proof. Indeed, all there is on the point is to the contrary. Now, as we have said, there is no direct testimony as to the nature of the fracture in the first instance, and no direct proof as to whether or not an extension was used in the reduction of the fracture; but the trial court said, whatever the treatment, it was proper, and the appliances used were correct. We are constrained to hold that there was not enough testimony to take the case to the jury on the thought indicated by the trial court in ruling on defendant's motion to direct a verdict, even assuming that such an issue was presented by the pleadings.

III. Some of the rulings on testimony are complained of. For example, it is argued that certain nonexpert witnesses were permitted to state, not only that plaintiff suffered pain, but that she was or was not afflicted with a certain disease, naming it. Of course, nonexperts should not be permiteed to give such testimony. See 5 Encyc. of Evidence, page 698, and cases cited; *State v. Hockett,* 70 Iowa, 442. While nonexpert witnesses in this case were permitted to testify as to the nature

5. Evidence: non-experts: harmless error.

of plaintiff's ailments, the testimony was nonprejudicial to defendant; for he was treating plaintiff for that kind of ailment, to wit, rheumatic pains.

Hypothetical questions put to an expert upon his examinations in chief should always be based upon facts which

6. SAME: experts: hypothetical questions.

the testimony proves or tends to establish. *In re Will of Ames,* 51 Iowa, 596; *State v. Cross,* 68 Iowa, 180; *Bomgardner v. Andrews,* 55 Iowa, 638. This rule was not always observed by the trial court. We need not stop to set out the objectionable questions; for it is enough to restate the rule.

IV. The defendant also asked the following instruction: "You are instructed that, unless you find under the evi-

7. SAME: negligence: recovery: instruction.

dence that on May 29, 1911, or some time prior thereto, the limb of plaintiff was in substantially the same condition, as to the bones extending up into the flesh, as at the time Dr. Conn treated the plaintiff, your verdict must be for the defendant." If we understand the theory adopted by the court, this instruction should have been given. The nature of the case is peculiar, and we have had much difficulty in discovering the theory of counsel for appellee in endeavoring to sustain the verdict and judgment. They say in argument.

The court must bear in mind that we are not asking damages for a failure of the bone to unite. That question was taken from the jury by the court. So that the argument of counsel as to the extension treatment, and, in fact, the treatment of the fracture as discussed by them, was not at issue. A large portion of defendant's argument is taken up by these questions that we insist are not in the case. Counsel keeps referring to the treatment of this fracture. We have made no complaint, as stated before, of the treatment until after the doctor told the plaintiff and her husband, as above shown, that the bone was united, and the treatment of the broken limb, so far as the fracture was concerned, had ceased. The limb was reduced, certain appliances were put upon it, and it remained in that condition until the doctor said it was time

they should be removed. They were removed, and the plaintiff was informed that her limb was united. It was after this that we claim that the doctor was negligent, careless, and unskillful in his treatment and in his diagnosis of the case; that he permitted a broken bone to remain imbedded in the flesh, that was causing intense pain, and failed to discover the cause of the pain or the remedy. In the month of March the plaintiff and her husband were told that there was a good union. He took hold of the limb and worked it up and down. It is probable that at that time the bones became disconnected and later worked into the flesh. It certainly was a very unskillful thing for any doctor to do, when the patient was as old as the plaintiff at this time.

The trial court did not submit the case on this theory, and the jury were not so instructed. The jury was not limited to what transpired after the bandages on plaintiff's limb were removed; nor was there any claim in the petition nor proof sufficient to take the case to the jury on the theory that defendant, by his manipulation of the limb in March, "disconnected the bones." Such a finding, even if it had been authorized by the instructions, would have been the result of pure surmise and conjecture.

For the errors pointed out, the judgment must be, and it is, *Reversed.*