## IN THE MATTER OF THE WILL OF MARY AMES.

1. **Will**: EVIDENCE: DECLARATIONS. Declarations made by parties who afterward become legatees in a will, before the execution thereof, are not admissible to affect the validity of the will.

2. ———: ———: ———. Nor are declarations of a legatee made after the execution of the will, tending to show undue influence in procuring it, admissible to affect its validity.

3. ———: ———: ———. The declaration of an executor who is a legatee and party to the record is not admissible where other legatees may be adversely affected by the declaration.

4. ———: ———: EXPERT. It is error to admit as evidence the opinion of an expert based upon a hypothetical case, formed in part of facts of which there is no proof.

5. ———: INSTRUCTION. The court properly instructed the jury that if the "testatrix was aged and had an impaired mind and memory, although she might not be legally incompetent to make a will, yet a will of such person ought not to be sustained unless it appeared that such disposition of property had been fairly made, and emanated from a free will, without the interposition of others, and accorded with intentions previously expressed or implied from family relations."

In the Matter of the Will of Mary Ames.

*Appeal from Clinton Circuit Court.*

THURSDAY, SEPTEMBER 18.

On the 13th day of February, 1877, an instrument in writing, purporting to be the last will and testament of Mary Ames, deceased, was filed in the office of the clerk of the Clinton Circuit Court, and at the same time George W. Ames, the executor, filed his petition, asking that a day be fixed for proving the same, and that upon the final hearing said will be allowed and recorded as the last will of said deceased, and that he be commissioned as said executor. On the 21st day of September, 1877, the appellees, Adaline Blades, Philena Ryner, Louisa Johnson and Susan Routzong, filed their *caveat,* contesting the admitting of the will to probate, and alleging that the same was obtained by the undue influence, importunities and fraud of John Hall, George W Ames and Mary C. Crowley, children of the said Mary Ames, and devisees under said alleged will; and that, at the time of the execution of said instrument, the said Mary Ames did not possess sufficient mental capacity to make a will by reason of old age and mental aberration.

The cause was tried to a jury, upon interrogatories submitted to them, and the following verdict was returned:

"Was the testatrix, Mary Ames, of sound mind at the time of the execution of the instrument purporting to be her last will?" *Answer.* "Yes."

"Was the will of the said Mary Ames, in controversy, procured by undue influence exercised by John Hall, George W. Ames, or Mary C. Crowley, or either of them?" *Ans.* "Yes."

The motion for new trial was overruled, and judgment was entered denying the probate of the will. The executor appeals.

*Merrell & Howat* and *A. R. Cotton,* for appellant.

*Cotton & Wolfe* and *W. A. Foster,* for appellees.

In the Matter of the Will of Mary Ames.

DAY, J.—At the time of the death of the testatrix, Mary Ames, the following named persons were her heirs, to-wit: Mary Philibut and John Hall, children by her first marriage; Dolly Ordway and John Philibut, grandchildren of the testatrix, and children of Harriet Philibut, a daughter of the testatrix by her first marriage; Philena Ryner, Adaline Blades, Louisa Johnson, Susan Routzong, George W. Ames and Mary C. Crowley, children of the testatrix by her marriage with George W. Ames, deceased. These persons were all legatees in the will in controversy, their several legacies being as follows: Mary Philibut, one thousand dollars; Dolly Ordway and John Philibut, five hundred dollars each; Philena Ryner, Adaline Blades, Louisa Johnson and Susan Routzong, five hundred dollars each; John Hall, George W. Ames and Mary C. Crowley, the residue of the estate, subject to the payment of the debts of the deceased and the foregoing legacies. Except George W. Ames, the executor named in the will, petitioning for its probate, and Philena Ryner, Adaline Blades, Louisa Johnson and Susan Routzong, heirs at law and legatees of the deceased, resisting the probate of the will, none of the heirs at law and legatees are parties to this controversy.

I.   John W. Blades, a grandson of the testatrix, informed John Hall, in California, of the supposed provisions of a will executed by the testatrix prior to the execution of the will in controversy, and was permitted, against the objection of the executor, to testify to the following declarations of John Hall: "He said he thought that the rest of the children all had a right to have an equal portion, and him among them; he said if he had the means he would go back and have the thing changed; he said he felt as though he could talk to the old lady to make it different if he could get to see her; he did not know how he could get the money to come back; he thought it had been so long since he had seen his mother she would listen to him a little more than the rest of them; he said he thought Miss Johnson and Mrs. Crowley had no more right to it than he or the rest of the girls; he said he did not

propose to let them get ahead of him; he said he would go back and see his mother and get the will changed; he said it would be better for me and the rest of the grandchildren if he could go back; he told me to keep still and say nothing about it, and not write to the folks that he was coming; he wanted to see his mother and have it fixed before any of the girls knew he was there."

George B. Blades, against the objection of the executor, testified as to the declarations of John Hall as follows: "He said it should not stand that way; that if he met Mr. Ames he would have revenge, or he would take his blood, or something like that."

Louisa Johnson, against the objection of the executor, re ferring to John Hall, was permitted to testify as follows: "He spoke about mother not being exactly right, and being childish; he said mother was perfectly childish. * * * Said he, for instance, 'she undertook to relate circumstances that happened when I was at home, and she gets different things mixed up, and I don't think mother is exactly right; she has changed wonderfully since I saw her; mother ain't like herself any more at all.'"

Louisa Johnson also testified as follows as to the statements of Mary C. Crowley: "At one time I was up there and she was talking about she was going to have her mother— that is the way she spoke it—make her will. That was, she said, 'I am going to have mother make her will.' I would not now say whether she said 'Madame Adaline' or 'Madame Blades' and 'Madame Ryner shall be cut mighty short; they s'all not have a cent more than the law allows them.'"

All these declarations were made before the will in con- troversy was executed. The contestants were also permitted to prove that John Hall, after the execution of the will, said that he had accomplished his desire—that he had the will changed.

The appellant assigns the admission of all of this evidence as

error. *First.* The declarations made before the execution of the will are, we think, clearly inadmissible. The only ground upon which it can be held that declarations of one not a party to the record are admissible in evidence, is that the declaration was at the time it was made against the interest of the party making it, and, therefore, presumably true. Before the execution of the will these declarants could not have anticipated that a will would be made which it would be against their interests to have defeated. As we understand the authorities cited by appellee, none of them sustains the proposition that a declaration made before the execution of a will, by one who afterward becomes a legatee but who is not a party to the litigation, may be admitted to affect the validity of the will against other legatees not parties to the suit who are interested in sustaining it.

*1. WILL: evidence: declarations.*

In *Benton v. Scott*, 3 Rand., 399 (407), respecting the admissibility of a declaration of Mrs. Scott, the following language is employed: "The true meaning and sense of the rule that the declarations of parties may be given in evidence against them, is the reasonable presumption that no person will make any declaration against his interest unless it be founded in truth. Testing the question by this criterion, the declarations of Mrs. Scott, made before the will, cannot be given in evidence, for it is the will which gives existence to her interest. Before its date she could not know that she would be left a penny; she could not know that it would not be so written as to oblige her to renounce it, and fly to the law for her support. She had not then that motive so powerful as to afford a safe guarantee that she would make no declaration as to the incapacity of her husband which was not founded in truth; and her declarations, wanting the essential quality to make them evidence, were properly excluded."

The same doctrine was announced in *Thompson v. Thompson*, 13 Ohio St., 356 (363). The court erred in admitting the

declarations of John Hall and Mrs. Crowley, made before the execution of the will. *Second*, as to the declaration of John Hall after the execution of the will. There is, upon this question, a conflict of authority. In support of the admissibility of such evidence the appellee cites *Beall v. Cunningham*, 1 B. Monroe, 399; *Rogers v. Rogers*, 2 Id., 324; and *Brown v. Moore*, 6 Yerger, 272. These cases support the position of appellee, and, so far as we have discovered, they are the only ones which do so. The two cases from Monroe lay great stress upon the fact that the legatee, being interested, could not be made a witness against the will. Appellee claims that, under section 3639 of the Code, the same reasoning is applicable in this State. This is a mistake. Section 3639 excludes the testimony of interested parties only as to personal transactions or communications between such witness and a person at the commencement of the examination deceased, against the executor or administrator of such party. The weight of authority seems to us to be decidedly against the admissibility of the evidence under consideration.

*Clark v. Morrison*, 25 Pa. St., is a leading case upon the subject, and in every material feature exactly like the case at bar. The opinion of the court is so directly applicable to this case that we feel justified in quoting quite fully therefrom. The court say: "On an issue of *devisavit vel non*, where there are nine devisees and legatees under the will, may the three of them who are contesting the will on the record give evidence of the declarations and admissions of three of the remaining six devisees to impeach the will? This is the precise question raised by the first two errors assigned. There is no doubt the admissions of the three devisees would be evidence against themselves, if they were the only parties interested under the will; but Margaret and Jane, daughters of the testator, were each entitled to legacies of two hundred dollars, and Eliza to a legacy of five dollars, and they are not parties to this issue. These daughters have a vested

interest in their legacies, and although it may be true, as was asserted in the argument, that they would fare better if the will were set aside than if it were sustained, yet this does not appear from the record, and no grounds are furnished us for such a presumption. As the case is presented to us they do not question the will, but claim their legacies under it. Are their rights to be affected by the admissions and declarations of their mother and brothers? The general rule of law consonant with reason is that one person is not to be prejudiced by the unauthorized declarations of another. The exceptions to the rule are found in those cases where there is a joint interest or privity of design between several. In such cases each is presumed to speak for the whole; but where there is neither joint interest nor combination, when each claims independently of the other, though under a common instrument, the words of one no more than his acts can bind the other. The interests of these devisees and legatees, under the will, are several, and not joint; and hence the three who would impeach it were bound, on principle, to produce evidence that was competent against all the rest. The evidence was not competent as to the three daughters named as legatees, and, therefore, was properly rejected. This conclusion is as clear on authority as on reason." This reasoning was cited with approval, and the same conclusion was reached, in *Thompson v. Thompson*, 13 Ohio St., 356, which is also a leading case. The following authorities announce the same doctrine: *Dillard v. Dillard*, 2 Strob. (S. C.), 89; *Naussear v. Arnold* 13 S. & R., 323 (328); *Hanberger v. Root*, 6 W. & S., 431; *Blakey's Heirs v. Blakey's Executrix*, 33 Ala., 611; *Forney v. Fenell*, 4 West Va., 729. This is a recent case, having been decided in 1871. The question is disposed of as follows:

"The fifth bill of exception is to the opinion of the court allowing evidence of the oral declarations, admissions and conversations of the devisee, J. B. Forney, to go in evidence to the jury to prove undue influence by him over the testatrix.

In the Matter of the Will of Mary Ames.

There are two other devisees who were infants at the time of the trial. It is claimed that the declarations and admissions of the said J. B. Forney cannot be admitted in evidence against his co-devisees. There is much conflict of authority on this question, but the weight of authority seems to be that the declarations, admissions and conversations of one devisee cannot be admitted in evidence against his co-devisees."

II. The contestants were permitted to prove a declaration of George W. Ames before the execution of the will. The appellant assigns the admission of this evidence as error. George W. Ames is the executor, and a party to the record. Upon the question as to the admissibility of his evidence there is also a conflict of authority. The following authorities sustain the admissibility of such evidence: *Dennis v. Weeks*, 46 Ga., 514; *Peoples v. Stevens*, 8 Rich. (S. C.), 198. The following authorities hold such evidence incompetent: *Shailer v. Bumstead*, 99 Mass., 112 (127); *Blakey's Heirs v. Blakey's Executrix*, 33 Ala., 611 (617). In *Hamburger v. Root*, 6 W. & S., the declaration of a devisee who was a party to the record was held to have been properly rejected. The reasoning of the authorities to which we have referred must, we think, work the exclusion of a declaration of an executor who is a legatee and a party to the record, where other legatees may be adversely affected by the declaration. The circumstance of his being executor and a party will not authorize him to manufacture evidence against other devisees, or to affect them by his declaration. The court erred in admitting this evidence.

III. The contestants introduced as a witness Dr. Mark Ranney, and propounded to him a hypothetical case, and asked his opinion of the mental condition of a person under the facts supposed. In the statement of the hypothetical case facts were introduced of which there was no proof. In admitting an opinion based upon such hypothetical statement there was error. *Hurst v. C., R. I. & P. R. Co.*, 49 Iowa, 76.

IV. The court, on request of appellees, instructed the jury as follows: "If a testatrix is aged, and has an impaired mind and memory, although such testatrix may not legally be incompetent to make a will, yet a will of such person ought not to be sustained, unless it appears that such disposition of property has been fairly made, to have emanated from a free will, without the interposition of others, and to accord with intentions previously expressed or implied from family relations; and, in this case, if you find from the evidence that the testatrix was over seventy years of age, with an impaired mind and memory, and although you may find she had sufficient mental capacity to make a will, yet if, from the evidence, you believe that a disposition of property has been made which is unfair to her legal representatives, that such disposition did not emanate from a free will, and is not in accord with the testatrix's previous intentions, either express or implied from the family relations, you will be justified in finding that it is not the voluntary and free will of the testatrix, and that such will was obtained by undue influence."

The giving of this instruction is assigned as error. The instruction is in harmony with the rule laid down in *Mowry v. Selbu*, 2 Brad., 133 (147), and was evidently drafted from that case. The case of *Hanel v. Hanel*, 1 Duval, 203, recognizes the same doctrine. No authority has been cited by appellant sustaining a different view. We think the instruction, taken together, states the rule as favorably for appellant as the authorities justify. Other objections to instructions are made, but we consider them without merit. In view of the disposition made of the case it becomes unnecessary to consider the sufficiency of the evidence to support the finding of the jury.

For the reasons above assigned the judgment is

REVERSED.