HERBERT H. BOEGEL, appellee, v. FRED C. MORSE, appellant.

No. 49931.

(Reported in 104 N.W.2d 826)

September 20, 1960.

Raun & Franck, of Denison, and Gordon Risher, of Shenandoah, for appellant.

Jones, Cambridge & Carl, of Atlantic, for appellee.

HAYS, J.—Plaintiff was awarded damages on account of injuries caused by the alleged negligence of defendant in the operation of his automobile upon the public highway. Defendant appeals.

The injuries are alleged to have been sustained when plaintiff, to avoid a collision with defendant's car, turned his car on the gravel shoulder and overturned. The incident occurred at the intersection of paved Highway No. 48 and a gravel county road where they intersect at what is known as the Coburg Corner, about six miles south of Red Oak, Iowa. At the point in question Highway No. 48, which is paved, runs generally north and south. The gravel county road runs east and west. Stop signs were in position on the gravel road at the intersection with no obstructions to view on either highway. From the intersection on No. 48 there is a slight upgrade to a crest some 500 to 600 feet to the south. About 4 p.m. on October 19, 1955, with the weather clear and pavement dry, plaintiff was driving north on No. 48 at about 50 to 55 miles per hour. At this time defendant was approaching the intersection from the west on the gravel road. Defendant entered the paved highway turning to the north, and plaintiff, to avoid a collision, pulled his car to the right onto the gravel on the east of the intersection, hit a road marker and a spillway, causing it to overturn, with the alleged resulting injuries.

Plaintiff asserts that as he came over the crest at about 50 to 55 miles per hour he saw defendant's car approaching the intersection from the west about 100 feet west of the stop sign. When about midway down the upgrade he saw defendant's car was past the stop sign and approaching the pavement. He sounded his horn and defendant's car stopped, or hesitated, and when he next saw defendant's car it was entering onto the pavement headed in a northeasterly direction. He applied his brakes with the result above-mentioned. Defendant's version is entirely different. He states he approached the pavement, stopped some

20 feet therefrom, looked to the north and the south, saw no cars approaching and entered upon the pavement, turning into the east lane and proceeding north; that he heard a crash and for the first time was aware of plaintiff's car. There is some dispute as to the speed of the defendant's car from the time it entered the pavement until it stopped after the crash, ranging from 5 to 20 miles per hour. One Marion Joslyn was an eyewitness to the incident. As a witness for the plaintiff he stated that he was driving a truck east on the gravel road some 100 to 150 feet behind defendant's car. He states he observed the car coming from the south and heard the horn when it was less than 300 feet from the intersection, at which time the defendant's car was entering the paved portion of the highway. He heard the brakes on the plaintiff's car "squealing", saw it go onto the gravel and overturn.

I. Defendant moved for a directed verdict at the close of plaintiff's direct case and at the close of all of the testimony. He moved for a judgment notwithstanding the verdict and for a new trial. All motions were overruled. Assigned errors 1 and 2 are based upon overruling of the motion for judgment notwithstanding the verdict on the ground that plaintiff did not show he was free from contributory negligence, specifically, that he had his car under control; that he kept a proper lookout; and was driving at a speed that would permit him to bring it to a stop within the assured clear distance ahead.

■ ■ Contributory negligence and proximate cause are questions of fact to be determined by a jury except where under the entire record the contributory negligence is so palpable that reasonable minds may fairly reach no other conclusion, and only then does it become a question of law. Huffman v. King, 222 Iowa 150, 268 N.W. 144; Clark v. Umbarger, 247 Iowa 938, 75 N.W.2d 243; Auen v. Kluver, 250 Iowa 619, 95 N.W.2d 273; Kuehn v. Jenkins, 251 Iowa 557, 100 N.W.2d 604. There was clearly a question for the jury upon that question in the instant case.

II. Error is assigned based upon the overruling of objections interposed to a hypothetical question propounded to Dr. Ralph K. Ghormley. His testimony was in a deposition taken

in January 1958 and was read in the trial which was in December 1958. He saw plaintiff first on August 7, 1956, and on August 14, 1956, he performed an operation on his spine. He stated patient informed him of a spinal injury that he received in 1954, and that his personal examination showed that he had been operated on for spondylolisthesis, which patient told him was done in October 1954.

He was asked this question: "Q. Assuming, Doctor, that on October 19, 1955, Mr. Boegel was driving an automobile at approximately 50 to 55 miles per hour, applied his brakes, skidded sideways on the gravel 30 to 40 feet, hit a post and the car in which he was riding flipped over on its top, came to rest upside down, that in the overturning of the car Mr. Boegel ended up in the back seat and felt shook up, that from that time until you first examined Mr. Boegel he had a pain in his back, taking into consideration all of your own findings that you have testified to here, do you have an opinion with a reasonable medical probability as to whether such accident caused the condition of the scar tissue to which you have testified?" Objection was made that it now develops that plaintiff was involved in other accidents of which the doctor was not informed and hence did not have before him all the information necessary for him to draw conclusions. The objection was overruled and the doctor answered, "A. I think it would have contributed to it." He was also asked his opinion "as to whether Mr. Boegel's permanent disability now existing is greater or less than the permanent disability he had prior to this accident on October 19, 1955." (Same objection, same ruling) He answered "I think it is greater." The record shows that since the accident in question and prior to his call upon Doctor Ghormley plaintiff had been involved in another automobile collision. However, there is no showing that he sustained injuries.

We see no merit to this assigned error. The rule appears to be that a hypothetical question must contain a full and fair recital of all relevant and material facts already in evidence on the theory of the party propounding it, but it need not embrace all of the facts in the case or state the other

parties' contentions or disputed matters. 32 C. J. S., Evidence, section 551; 20 Am. Jur., Evidence, section 796; In re Estate of Telsrow, 237 Iowa 672, 22 N.W.2d 792. Whether or not a proper foundation has been laid for such a question is to a great extent within the discretion of the trial court. Stickling v. Chicago, R. I. & P. Ry. Co., 212 Iowa 149, 232 N.W. 677; In re Estate of Telsrow, supra. We find no abuse of that discretion. While the absence of certain facts may materially affect the weight to be given to such testimony, as may be the case here, it is not for that reason incompetent. It clearly embraced plaintiff's theory.

█ III. The trial court refused to instruct as to the violation of the "assured clear distance ahead" statute, section 321.285, Code of 1954, with reference to the issue of contributory negligence and this is assigned as error. Under this record, we do not think the "assured clear distance ahead" statute is applicable. Leinen v. Boettger, 241 Iowa 910, 44 N.W.2d 73; Miller v. Stender, 251 Iowa 123, 98 N.W.2d 338.

IV. Error is assigned in the denial of a new trial. While several propositions are urged we will comment upon but one of them as the others deal with matters herein already covered.

█ █ An affidavit of one juror was filed in which it is stated that she took notes of the testimony during the trial and referred to them during the deliberations of the jury. She states that she does not know if any other juror observed them or referred to them. Such is claimed to be misconduct such as to entitle defendant to a new trial. We disagree. While this exact question does not seem to have been before this court there is authority upon the same. The majority rule seems to be that the taking of notes, while largely a matter of discretion in the trial court, does not, at least in the absence of a showing of prejudice, give cause for the granting of a new trial. 89 C. J. S., Trial, section 456; 39 Am. Jur., New Trial, section 74; Annotation, 154 A. L. R. 878; United States v. Campbell, 138 F.Supp. 344; Omaha Fire Ins. Co. v. Crighton, 50 Neb. 314, 69 N.W. 766; Bates v. Newman, 121 Cal. App.2d 800, 264 P.2d 197.

The record here shows that the trial court was advised that

the juror had taken notes into the jury room and authorized her to use them. We find nothing wrong with this procedure.

Finding no error the judgment of the trial court is affirmed. —Affirmed.

All JUSTICES concur except OLIVER, J., not sitting.