STATE OF IOWA, appellee, v. MONTE THARP, appellant.

No. 51527.

(Reported in 138 N.W.2d 78)

November 16, 1965.

Frederick G. White and Joe Nutting, both of Waterloo, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, and D. Quinn Martin, Black Hawk County Attorney, of Waterloo, for appellee.

LARSON, J.—On the afternoon of February 19, 1964, defendant, Monte Tharp, was visiting at the home of Lawrence Salter in Evansdale, Iowa. Salter operated a tavern located some 24 feet in front of his house and defendant's mother, Mary Barta, lived with and worked for him in the tavern.

There had been trouble between Salter and Mrs. Barta. Defendant knew Salter had recently beaten his mother, once so severely he broke her jaw on both sides. On this date her jaws were wired and she still suffered from infections induced by the injuries.

Defendant, a drummer in a combo band, had arranged to accompany a Mr. Klodner to an engagement at Cedar Rapids that evening, so while awaiting dinner he took a nap in the Salter house. While attending bar in the tavern, his mother and Salter again quarreled and Mary was pushed to the floor, her clothes torn and her knee skinned. Emotionally upset, she came to the house crying, and awakened defendant, who tried to calm her and restore peace between Salter and Mary. Mary and Salter then returned to the tavern.

About 7 p.m. Klodner arrived to pick up defendant and Salter went to the house to get him. A fight developed, which terminated when Salter received a fatal stab wound in the chest. Police were called at defendant's request. When he told officers that he had stabbed Salter, he was arrested and taken to the police station for questioning. Salter was found in the areaway

between the house and the tavern and was taken to the hospital. He was pronounced dead on arrival.

At the police station defendant gave the officers a statement, which was typewritten and signed by him. Later that evening he was arraigned before a judge of the Municipal Court of Waterloo, bound over to the district court, and taken to jail.

On February 27, 1964, a county attorney's true information was filed charging defendant with the murder of Lawrence Salter, with malice aforethought, contrary to and in violation of section 690.1 of the 1962 Code of Iowa. He entered a plea of not guilty and trial was commenced May 25, 1964. The jury returned a verdict of guilty of second-degree murder on June 6, 1964. His motion for a new trial was overruled, and on June 19, 1964, he was sentenced to the Iowa State Penitentiary for a period of not to exceed fifteen years. He appeals, listing four alleged errors upon which he relies for reversal.

We shall relate to the facts that are material upon the assigned errors in more detail as we consider the various contentions advanced.

I. The defendant's first assigned error is based upon the court's refusal to allow defendant or his counsel to examine depositions taken, pursuant to section 769.18 of the Code, of Zane Ivan Hanlin, Dennis Klodner and Dorothy Finger, later used as witnesses for the State. Section 769.18 provides:

"The clerk of the district court, on application of the county attorney, shall issue subpoenas for such witnesses as the county attorney may require, and in such subpoenas shall direct the appearance of said witnesses before the county attorney at a specified time and place; provided that no subpoena shall issue unless an order authorizing same shall have been first made by the court or a judge thereof."

Prior to the enactments of the Sixty-first General Assembly there were no statutory provisions for defendant participation in the taking of such testimony. See Senate File 430, Acts of the Sixty-first General Assembly, effective July 8, 1965. Therein section 769.18 was amended to add: "After preliminary information, indictment, or information the defendant shall be present and have the opportunity to cross-examine any witnesses

whose appearance before the county attorney is required by this section." The provisions of this amendment, of course, could not apply here.

Nevertheless, before and during the trial defendant requested copies of the testimony taken before the county attorney of the State's witnesses above mentioned and Lela Hanlin and Mary Barta, basing his request upon constitutional grounds. The court denied the request, but rightfully allowed the defendant to examine parts of the depositions of Mary Barta and Lela Hanlin prior to their cross-examinations. These witnesses all testified at the trial.

It is appellant's contention that the court's refusal to allow prior examination of these depositions deprived him of the opportunity of ascertaining all available evidence as to his guilt or punishment. He argues that without such information he could not adequately cross-examine the State's witnesses and could not ascertain whether the State was suppressing evidence favorable to him. He likens the county attorney's examination to the grand jury investigation (section 769.12) and points to section 771.24 requiring certain disclosures by the clerk and members of the grand jury of the testimony given by witnesses before the grand jury when required by the court, as authority for defendant's claim to that produced before the county attorney.

It is true the court could require a member or clerk of the grand jury "to disclose the testimony of a witness examined before the grand jury for the purpose of ascertaining whether it is consistent with that given by him before the court," as may be necessary in the administration of justice.

However, until the amendment enacted in 1965 became the law, we have found no statutory authority by which an accused may obtain the work product of the county attorney's office. True, defendant has the right to be furnished with the names of the parties who will testify for the State and, by the minutes attached to the indictment or information, be informed as to the substance of their testimony. Section 769.4 of the Code. We understand no such request was made herein and that no minutes or bill of particulars was furnished, although available to defendant on motion. Thus, appellant's contention that he was

illegally refused an examination of the testimony taken by the county attorney has no merit.

We fully considered such a contention in State v. District Court, 253 Iowa 903, 911, 114 N.W.2d 317, saying such a discovery proceeding "is unnecessary for the protection of the accused, [and would be] unfortunate and undesirable." We pointed out that for many years a defendant in a criminal case has had all the protection that can be legitimately needed or afforded by discovery. He is furnished a copy of the indictment; the names of the prosecution's witnesses must be furnished him, and if this is not done, they may not testify against him. He has the right under our constitution to be confronted by the witnesses against him. Furthermore, the minutes of the testimony before the grand jury, or the substance of the proposed testimony of each witness, if the cause is prosecuted by true information, must be furnished him. We then agreed with the Supreme Court of Vermont when it said: " 'There is no policy in the law which would seem to require opening the door to this sort of thing. Indiscriminate and unrestricted discovery in all cases would not lead to justice, but justice perverted.' " Hackel v. Williams, 122 Vt. 168, 171, 167 A.2d 364, 366.

Appellant cites and relies principally upon Brady v. Maryland, 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215, as authority for the proposition that due process is denied him unless he be furnished copies of this testimony. The Brady case does not so hold. It considered only the effect of an actual suppression of evidence favorable to defendant. As we understand the Brady case, it appeared the State had suppressed evidence that would effect the punishment to be administered the accused, and under such a showing the court held there would be a denial of the due process clause of the Fourteenth Amendment, but that neither that clause nor the equal protection clause of that amendment was violated by restricting a new trial to the question of punishment. As further bearing on this matter, see Palermo v. United States, 360 U. S. 343, 349, 79 S. Ct. 1217, 3 L. Ed.2d 1287; State v. Kelly, 249 Iowa 1219, 1221, 91 N.W.2d 562.

There is no claim here that the State suppressed any evidence favorable to appellant. The claim is that he was not able

to determine whether it was suppressed or not, and to deny him the right to determine that question before trial violated the law and his constitutional right. What defendant really asked was a right of discovery.

Under this record there is not even an indication anything favorable to defendant was suppressed by the State, and we find no error in the refusal to furnish defendant copies of the testimony taken before the county attorney.

II. In his second assignment appellant contends the court erred in admitting into evidence statements taken from defendant by the arresting and interrogating police officers after his arrest and while he was in custody. It is contended that after the officers learned of Salter's death they should have again advised defendant of his right to remain silent and to an opportunity to consult with counsel.

At the time of defendant's arrest at approximately 7:30 p.m. Salter was alive, and on the trip to the police station neither the defendant nor the officers knew otherwise. At the station, after being advised of his rights, defendant gave the officers a statement, which was typed up, and it became an exhibit in the trial. Before it was finished and before it was signed by defendant, the officers were advised of Salter's death but did not tell defendant thereof until later that evening.

It is true the law requires, when one is arrested without warrant, that he shall without unnecessary delay be taken before the nearest or most accessible magistrate in the county in which the arrest is made, and that the grounds on which the arrest was made shall be stated to the magistrate by affidavit. Section 758.1, Code, 1962. However, we have consistently held that failure to take an accused immediately before a magistrate for an arraignment under this section does not of itself render a statement taken prior thereto inadmissible. State v. Hodge, 252 Iowa 449, 458, 105 N.W.2d 613, and citations; State v. Williams, 245 Iowa 494, 62 N.W.2d 742. In those cases, as here, it did not appear the defendant was being held for the sole purpose of obtaining a confession. There were many circumstances to be investigated before a proper charge could be determined and, while defendant admitted the stabbing to the arresting officer, it is clear the delay

in taking him before a magistrate was not unreasonable or for the sole purpose of obtaining a statement from him.

Appellant cites several federal cases as support for his contention that the right to remain silent and to consult counsel was denied him when he signed the statement in the police station— among them, Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed.2d 799, 93 A. L. R.2d 733, and Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977.

We fully considered this same contention in State v. Fox, 257 Iowa 174, 178, 131 N.W.2d 684, 686, and pointed out that each case must largely turn upon its own facts as revealed by the evidence surrounding the interrogation, and that Escobedo did not alter our rule that evidence of a purely voluntary statement made by one accused of a crime, otherwise material, was admissible. In the Escobedo case evidence of the admission was denied because the accused was not advised as to his rights or allowed to consult his waiting attorney before the statement was given. No such situation is present here.

After being advised of his rights, the defendant said he wished to give the chief of police a statement, and we can think of no rule that would require a new warning of an accused's right to remain silent when, on further and separate investigation, other evidence bearing upon the seriousness of the crime is discovered. Officers Smock and Frodin testified that while en route to the station they heard Chief Niedert ask defendant if he would make a statement, coupled with advice that he was not required to do so. Smock testified Chief Niedert told Tharp "It's your right to refuse us if you like", and that defendant said: "No, Bob, I'll give you one." At the station Niedert "mentioned to Tharp that he could have an attorney [both] before and after [they knew] Salter was dead." He refused. One warning to a suspect of his rights should ordinarily suffice. The charge, if Salter had lived, could have been assault with intent to commit murder, punishable by thirty years' imprisonment under section 690.6, and if he died, a term of years or life under a charge of murder. He does not claim this difference was a factor in the voluntariness of his statement.

Nor does the fact that he was not charged or arraigned

until later that evening of itself make his statement involuntary or a denial of due process. The lapse of time was not unreasonable, nor did it appear the time lapse was solely attributable to the interrogation at the police station. State v. Hodge, supra. It was, therefore, proper to permit the jury to consider evidence of voluntariness as bearing on the weight to be given the statement to the police. See State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518; State v. Holland, 258 Iowa 206, 138 N.W.2d 86; and Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed.2d 908, 1 A. L. R.3d 1205. We find no error at this point.

III. Appellant's third assignment of error, we think, must be sustained. The attorney general concedes it was error to admit into evidence opinion testimony of a doctor as to the manner in which the knife would have to have been held to inflict the chest wounds found on Salter's body. He contends, however, that the error was harmless because the court instructed the jury that it should disregard the doctor's opinion if the assumed facts were not established by the evidence. We cannot agree.

Doctor Paul O'Keefe testified that when he examined the deceased he observed four puncture-type wounds along the right side of the body, one above the other, each of which was approximately inward about 25 degrees and upward about 25 degrees. Death was caused by a four and one-half inch wound by a sharp instrument which penetrated through the diaphragm and upward into the apex of the heart.

The doctor was recalled and asked the following hypothetical question: "From your observation of the wounds of the decedent, and based upon your experience and training in this area, and assuming that an assailant and the decedent are standing, and assuming further that a knife such as State's Exhibit 20 would be in the left hand of the assailant, would you have an opinion as to what relative position the two individuals would have been in to inflict the wounds that you described in your earlier testimony?"

The defendant objected to the question, stating: "That is objected to as not a proper hypothetical question. It assumes facts not in the record. It assumes facts not proved by any prima

facie evidence, including: (1) That the defendant was standing; (2) that the decedent was standing; (3) that the defendant had a knife in his left hand."

The doctor was allowed to answer and said: "* * * To cause those wounds, if the knife was in the left hand, it would have to be held in this position. [Indicating] And he would have to be standing behind, and a little to the left." Further explaining, he said: "The handle of the knife would be in the palm of the hand. The blade would protrude out from between the thumb and index finger."

A hypothetical question properly framed so as to include only facts which have been established by the record may be admitted. It is well established in this jurisdiction, as well as elsewhere, that where the record is lacking in any evidence proving or tending to prove the assumed facts, the hypothetical question is improper. In re Will of Mary Ames, 51 Iowa 596, 603, 2 N.W. 408; Stutsman v. Sharpless, 125 Iowa 335, 342, 101 N.W. 105. Also as bearing on this question see Adams v. Junger, 158 Iowa 449, 459, 139 N.W. 1096; Ipsen v. Ruess, 239 Iowa 1376, 1389, 35 N.W.2d 82; Hardwick v. Bublitz, 254 Iowa 1253, 1259, 119 N.W.2d 886; Boegel v. Morse, 251 Iowa 1253, 1257, 104 N.W.2d 826.

In 20 Am. Jur., Evidence, section 788, page 662, as to hypothetical questions, it is said: "* * * the usual procedure is for counsel offering the witness, after establishing the latter's competency, to present the exact state of facts upon which opinion testimony is desired by hypothetical questions—questions which, for the purpose of the trial, assume a state of facts which has been shown by the evidence of other witnesses—and ask the witness to state his opinion based upon the facts recited in the hypothetical questions. *Such questions must include only facts that are supported by evidence* and should embody substantially all facts relating to the particular matter upon which an expert opinion is sought to be elicited * * *." (Emphasis supplied.)

Appellee concedes that, apart from the assertion by the witness Klodner that he observed defendant come into the tavern with a knife in his left hand, there is and was nothing in this record, directly or inferentially, supporting the proposition that

appellant and the decedent were standing, or that the appellant had the knife in his left hand at the time the wounds on Salter were inflicted. These matters were clearly pointed out to the court, and error resulted in the admission of the answer given by Doctor O'Keefe.

While conceding error in admitting this testimony, the State contends the error was not prejudicial and should not require a reversal. It is the State's position that in Instruction No. 24 the court cured the error by telling the jury that if it found the facts assumed in the hypothetical question not established by the evidence, then the opinion should not be given any weight or consideration by it. As authority for that position, it cites Crozier v. Lenox Mutual Ins. Assn., 252 Iowa 1176, 1183, 1184, 110 N.W.2d 403, and In re Estate of Telsrow, 237 Iowa 672, 682, 22 N.W.2d 792, and citations therein. Both of these cases are civil actions, the objections were less than specific, and the facts assumed in the hypothetical questions did have support in the evidence. Under those circumstances we did hold the ruling was without prejudice "since the jury was fully instructed that if the facts stated in the hypothetical question were incorrect, unfair, or untrue, or did not fairly include all facts in evidence upon the subject of the inquiry, then the opinions based thereon should be disregarded."

Nevertheless, in this criminal case, where there was no evidence to support the question, we think the properly objected-to opinion created such prejudicial testimony that it could not be erased by such an instruction to disregard. The poison could not be thus neutralized.

Defendant's position was one of self-defense, and this question without evidential support, whether so designed or not, tended to advance the State's theory of the case, i.e., that defendant had laid in wait, unexpectedly assaulted Salter from behind, and knifed him in the chest.

On the other hand, the only evidence of the position of the parties when the wounds were inflicted is found in the testimony given by defendant. He stated that when he admonished Salter for the bad treatment given his mother, Salter became enraged and attacked him, threatening to kill both the defendant and his

mother, that he tried to defend himself with the empty beer bottle, which did not stop Salter, that he retreated into the kitchen, found the knife, and that in an effort to get past Salter and into the tavern where his mother was, he was knocked down. While on his hands and knees, with Salter on his back, defendant said he placed the knife in his right hand and jabbed back over his left shoulder and inflicted the wounds which stopped the fight. He then went into the tavern and asked those present to call an ambulance and the police.

The State attempted to show that appellant did not kill in self-defense, but as revenge for Salter's attacks on his mother. The evidence tending to support that view was given by the police officers, who testified defendant told them he had done it because Salter beat up his mother, and by Mr. Klodner who testified he heard appellant say three times shortly after he entered the tavern that "I just couldn't kill him."

Thus, while it may be true there was some other evidence to refute defendant's claim of self-defense, we think the jury should not have been allowed to consider the opinion based upon such facts. We conclude the opinion given, stressed in final argument by the State, was not cured by the instruction given and constituted reversible error.

IV. In his final assignment appellant contends the trial court erred in allowing the State to introduce prejudicial hearsay testimony on rebuttal. He contends this testimony was inadmissible either as direct or rebuttal evidence, especially where, as here, it was ostensibly offered as impeachment on collateral matters. He cites State v. Finley, 147 Iowa 563, 126 N.W. 699; State v. Rutledge, 243 Iowa 179, 47 N.W.2d 251, 50 N.W.2d 801; and State v. Merrill, 242 Iowa 1156, 49 N.W.2d 547. Thus, we find it unnecessary to decide at this time whether the testimony as to defendant's mental attitude prior to the killing would have been admissible as an exception to the hearsay rule. Its use was by instruction limited to impeachment.

Evidence of prior statements inconsistent with those made by a witness at the trial on a material matter may, of course, be introduced for the purpose of impeachment. State v. Patrick, 201 Iowa 368, 207 N.W. 393.

From the record we learn Lela Hanlin was called by the State on rebuttal and was allowed to testify, over defendant's objections, that she had heard the appellant's mother, Mary Barta, say : " 'Monte's mad at Larry because he's treating me so mean. The next time Larry lays a hand on me, Monte said he would kill him.' " Defendant was not present at the time of the conversation.

Mrs. Barta, testifying for the defense, had previously asserted, in answer to a question on cross-examination, that she could not remember making any statement to Mrs. Hanlin that her son had threatened to kill Salter, and in effect denied it, saying : "A statement like that? That's never crossed my mind. * * *."

In Instruction No. 25 the trial court told the jury that Mrs. Hanlin's testimony as to what Mary Barta had told her could be used only for the purpose of impeaching Mary Barta as a witness and for no other purpose. Under this record that was a fair instruction, for the testimony of Mrs. Hanlin, being on a material matter, was proper rebuttal testimony.

█ █ Evidence of threats by the accused are relevant to the issue of intent, malice, deliberation or premeditation. While evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and, with certain exceptions, is inadmissible (rule 63, Uniform Rules of Evidence; Wigmore, Evidence, 3d Edition, 1940, section 105), this evidence might well come within the exception.

█ Appellant claims the inference raised by this testimony obviously related to defendant's motive, or intent to kill, and contradicted his contention of self-defense after an unprovoked attack by Salter. It is his contention this testimony went much further than necessary to impeach the veracity of Mrs. Barta.

However, since the jury was not allowed to consider this testimony as substantive evidence, but as impeachment evidence only, we cannot say its admission as such was so improper as to directly prevent a fair trial and require the granting of a new **trial.**

Although the verdict was second degree and the sentence

moderate, for the reason stated in Division III hereof we must reverse the case and remand it for a new trial.—Reversed and remanded.

All JUSTICES concur.