OAK LEAF COUNTRY CLUB, INC., and Reinbeck Farms, Inc., Appellants,

v.

Harold K. WILSON, Appellee.

No. 2–58405.

Supreme Court of Iowa.

Sept. 21, 1977.

Rickert & Thompson, Reinbeck, for appellants.

John B. Grier and Michael J. Moon, of Cartwright, Druker & Rigden, Marshalltown, for appellee.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP, and HARRIS, JJ.

MOORE, Chief Justice.

Plaintiffs appeal trial court judgment entered on ruling sustaining defendant's motion for directed verdict made at close of plaintiffs' evidence in water damage action arising subsequent to straightening of meandering stream. We reverse and remand.

The factual background of this appeal is as follows. Black Hawk Creek is a meandering stream which flows through defendant's property and then passes eastwardly through both plaintiff Oak Leaf Country Club's and plaintiff Reinbeck Farms' properties in Grundy County, Iowa. Because of the topography of the area and heavy seasonal rains the properties are flooded each spring causing some sand and silt buildup as well as erosion damage.

In May, 1972, defendant farmer Wilson initiated a channelization project in order to reclaim several acres of farmland which were made unusable by the flow of the stream. Subsequent to completing the channelization he received after-the-fact approval from the Iowa Natural Resources Council. The effect of defendant's project, which was completed entirely on his own property, was to eliminate bends in the creek, thus reclaiming 20 acres for crop land. After the straightening, although there was some drainage from the old bed into the creek, there was no noticeable increase in the amount of water flowing in the creek nor diversion where the channel entered plaintiffs' properties.

The next year when the floods came on again plaintiffs noticed the velocity of the water coursing through Black Hawk Creek was more intense than in prior years; this was also true in 1974. They noted the aftermath of the flooding in both years significantly increased sand and silt deposits, crop damage and extensive erosion of creek banks. Consequently in April, 1974, they filed an action at law alleging defendant's straightening of the stream altered its natural course and accelerated the velocity of the current which caused increased scouring and abrasion to creek banks as well as increased flooding thereby damaging plaintiffs through deposits of sand, silt and extensive erosion. Oak Leaf prayed for damages in the amount of $95,000; Reinbeck Farms prayed for $10,000. Defendant generally denied these allegations in his answer and also raised as an affirmative defense plaintiffs' failure to mitigate damages by their failure to stabilize the banks of the creek along their respective properties. At the close of their case in chief, plaintiffs amended their petition to alternatively allege negligence under a res ipsa loquitur theory.

The evidence developed at trial showed that after the channelization project was completed both plaintiffs had considerably more extensive flood damage than at any time previously. Donald Dirks, Oak Leaf's vice president, testified that before the project "perhaps six inches to a foot of creek bank would slough off after a big flood;" afterwards he estimated nearly six feet had "caved in." Furthermore, he now observed "huge sand drifts" as high as two feet at numerous locations on the golf course. On cross-examination, he conceded nothing had been done to stabilize the creek banks since the spring of 1973. He concluded that as a result of the increased flood damage the market value of the golf course dropped substantially.

Delbert Clark, Reinbeck's farm manager, testified that in both 1973 and 1974 the flood water came across the corn field with such force that 10–12 acres were completely destroyed as "the corn was all smashed down and covered with mud." Such dam-

age had not resulted from floods prior to 1973. Reinbeck was not only unable to replant the damaged crops for those years but also was unable to rent any additional land to mitigate its losses. He expressed the opinion as a result of the channelization and resultant flood loss the market value of the crop land had been reduced.

Both Dirks and Clark stated they observed an increased velocity current in the Black Hawk Creek after the channelization during the 1973 and 1974 floods. Thomas Campbell, general manager for Reinbeck, testified this was in contrast with floods in prior years when the water "overflowed or spilled from the creek" and spread out over the land "like a lake." Al Austin, an I.S.U. professor of civil engineering whose specialty was hydraulics, testified on plaintiffs behalf and verified their observations stating the velocity of the stream was increased from 3.45 feet per second to 3.73 feet per second. He opined erosion of the creek bank was accelerated by the channelization project. However, on cross-examination he conceded he was unable to say whether any of the damages would have occurred if there had been no change in the channel.

At the close of plaintiffs' case, defendant made a multifaceted motion for directed verdict on the grounds plaintiffs had failed to introduce sufficient evidence on liability, causation and damages. Trial court sustained the motion and in doing so, stated:

"I sustain the motion on each and every count which is the—sustain the motion on Count I in which I feel there is insufficient evidence, too small to submit this to the Jury. On Count II, on the proximate cause question, and Count III, the damage question."

From judgment for defendant, plaintiffs appealed.

I. We first consider plaintiffs' contention the trial court erred by generally sustaining defendant's motion for directed verdict in contravention of the requirement of rule 118, Rules of Civil Procedure.

Under rule 118 trial courts are required to make specific rulings on each and every ground of a multifaceted motion. The purpose of the rule is to enable the parties to know which grounds are sustained by a court and thus limit issues on appeal. *Giltner v. Stark*, Iowa, 252 N.W.2d 743, 745. We have stated that cases involving violation of rule 118 will ordinarily be reversed and remanded for specific rulings. *Brekken v. County Bd. of Rev. of Story County*, Iowa, 223 N.W.2d 246, 247; *Ruby v. Easton*, Iowa, 207 N.W.2d 10, 14, 15.

We think the court minimally complied with rule 118 although it might well have elaborated upon its reasons. *Dudley v. William Penn College*, Iowa, 219 N.W.2d 484, 487. Reversal and remand for specific rulings here would cause unnecessary delay and expense. We therefore will determine the merits of trial court's ruling.

II. At the close of their case, plaintiffs amended their petition to add another division alleging negligence under the theory of res ipsa loquitur. Defendant moved for a directed verdict on the issue of negligence and trial court sustained the ruling.

Recently in *Fosselman v. Waterloo Comm. Sch. Dist., Etc.*, Iowa, 229 N.W.2d 280, 283, we stated:

"Res ipsa loquitur is a rule of evidence which, when applied, permits but does not compel an inference that defendant was negligent. *Clippinger v. Becker*, Iowa, 220 N.W.2d 879, 881. Under the doctrine the happening of an injury permits an inference of negligence where plaintiff produces substantial evidence that (1) the injury is caused by an agency or instrumentality under the exclusive control and management of defendant and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used. *Clippinger v. Becker*, supra; *Palleson v. Jewell Cooperative Elevator*, Iowa, 219 N.W.2d 8, 13; *Fischer, Inc. v. Standard Brands, Inc.*, Iowa, 204 N.W.2d 579, 583. Unless both elements are present the doctrine does not apply. *Wiles v. Myerly*, Iowa, 210 N.W.2d 619, 625, and citations."

■ The real test of control is whether defendant is in control at the time of the negligent act which, either at that time, or later, produced the accident. *Breeding v. Reed,* 253 Iowa 129, 137, 110 N.W.2d 552, 557, and citations.

Applying these principles to the claimed floodwater damages we do not believe the doctrine of res ipsa loquitur is applicable to this type of case. We believe our statements in *Eaves v. City of Ottumwa,* 240 Iowa 956, 970, 971, 38 N.W.2d 761, 769, 11 A.L.R.2d 1164, 1177, are still valid:

"Here the physical cause of plaintiff's damage was overflow from the race. Defendant's answer admits the race, hydroelectric plant and gates were under its exclusive control and management although it denies the res ipsa doctrine is applicable. *Although defendant was in exclusive control of the race and gates, it cannot fairly be said the floodwater flowing into the race from the river was exclusively under defendant's control and management. Such floodwater is one of the instrumentalities that caused the damage.*

"Our decisions involving the res ipsa rule have uniformly stressed the necessity of defendant's complete and exclusive control of the instrumentalities that cause the injury. *Pierce v. Gruben,* 237 Iowa 329, 347, 21 N.W.2d 881, 889, 19 N.C.C.A.,N.S., 73; *Whetstine v. Moravec,* 228 Iowa 352, 368, 291 N.W. 425; *Highland Golf Club v. Sinclair Refining Co.,* supra, Iowa, 59 F.Supp. 911, 915.

"Further, we think it may not fairly be said that in the ordinary course of things or, as frequently stated, according to common experience, water does not overflow the banks of such a race where those in control of the race exercise reasonable care. Evidence which may show negligence in this particular case is not to be considered in determining this question.

"Certainly it is common experience for natural watercourses to overflow their banks in time of heavy rains without lack of care by any human agency. Flooding of lowlands along swollen streams in wet seasons is common. It appears here the Des Moines River overflowed its banks and flooded other portions of Ottumwa at this particular time. Turkey Island and territory on all sides of it were under water. The dams were scarcely visible. That the water which caused the damage here escaped from an artificial channel that carries water from the river rather than from the river itself seems insufficient basis for an inference the occurrence was the result of negligence." (Emphasis supplied).

■ The evidence here is insufficient to generate a jury question as to the existence of the foundational fact of exclusive control. This essential of the doctrine being absent, the doctrine does not apply. *Cronin v. Hagan,* Iowa, 221 N.W.2d 748, 753.

The trial court did not err in refusing to submit the negligence theory under the doctrine of res ipsa loquitur under the division pleaded by amendment at the close of plaintiffs' evidence in chief. However the original divisions of plaintiffs' petition which alleged violation of water rights, causation and damages must be considered in view of the court's order sustaining defendant's motion for directed verdict.

■ III. In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made. *B & B Asphalt Co. v. T. S. McShane Co.,* Iowa, 242 N.W.2d 279, 284; *Andrews v. Struble,* Iowa, 178 N.W.2d 391, 397. Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them a jury question is engendered. *Becker v. D & E Distributing Co.,* Iowa, 247 N.W.2d 727, 729, 730; *Schiltz v. Cullen-Schiltz & Assoc., Inc.,* Iowa, 228 N.W.2d 10, 17; *McCaull v. Universal Manufacturing Company,* Iowa, 218 N.W.2d 592, 593.

■ Furthermore, when plaintiffs have adduced substantial evidence in support of each element of their cause of action, the motion should be overruled. *B & B Asphalt Co. v. T. S. McShane Co.,* supra, 242 N.W.2d

at 284; *Larkin v. Bierman,* Iowa, 213 N.W.2d 487, 488.

IV. Plaintiffs contend the trial court erred in sustaining defendant's motion for directed verdict on the ground there was insufficient evidence of liability to warrant submission to the jury.

For the reasons hereafter set forth, we agree and hold trial court was in error in determining a jury question was not engendered on the issue of liability for alleged violation of plaintiffs' water rights.

Controversy over surface waters and watercourses, drainage, interception and diversion of waters of various types has been the source of much litigation. This court at great length in *Hunt v. Smith,* 238 Iowa 543, 28 N.W.2d 213, discussed and analyzed the pertinent principles of law as established by our earlier cases. Detailed repetition is unnecessary.

In *Logsdon v. Anderson,* 239 Iowa 585, 590, 30 N.W.2d 787, 790, which is factually similar to the case at bar, we stated:

"The water that is here involved is a stream that flows nearly all the time through the hills off to the northeast, and through the road culvert to defendants' land. Of course defendants can turn the water that comes through the culvert in any manner they see fit on their own land. They do not need to let the water spread out over their land. They can turn it into ditches on their land and divert the flow of water around rather than across the ten acres, *so long as they do not* cast it upon the lands of adjoining owners, or *interfere with the rights of riparian owners.* (Citations)."

■ More recently in *Rosendahl Levy v. Iowa State Highway Commission,* Iowa, 171 N.W.2d 530, 536, we said:

"The general rule is that the dominant owner is entitled to drain surface water in a natural watercourse from his land over the servient owner's land and if any damage results the servient owner is without remedy. This rule, however, is subject to qualification. We have many times held that if the volume of water is substantially increased or *if the manner or method of drainage is substantially changed and actual damage results, the servient owner is entitled to relief."* (Emphasis supplied).

A corollary of this rule is an overriding requirement that one must exercise ordinary care in the use of his property so as not to injure the rights of neighboring landowners. *Tretter v. Chicago & G. W. Ry. Co.,* 147 Iowa 375, 380, 126 N.W. 339, 341.

Of course cases of this type depend largely on the particular facts shown. *Rosendahl Levy v. Iowa State Highway Commission,* supra, 171 N.W.2d at page 536; *Woods v. Incorporated Town of State Centre,* 249 Iowa 38, 41, 85 N.W.2d 519, 521.

■ Although we have never specially held a riparian owner may be liable for accelerating or hastening the flow of a water course to the injury of another, we believe permitting recovery for this type of damage is consistent with our prior decisions requiring a landowner to exercise due care for his neighbors when he avails himself of a watercourse. Several leading authorities on water rights indicate such a cause is actionable and whether liability attaches is determined by examination of the reasonableness of the changes effected under all the circumstances. 5 Powell on Real Property, section 717 at 389; Gould on Waters (3rd ed.), sections 208–218(a), at 401–430; Kinney on Irrigation and Water Rights (2d ed.), section 546 at 947–948; 2 Farnham, Waters and Water Rights, section 487 at 1631–1633. 78 Am.Jur.2d, Waters, section 13 at 548 states:

"According to many authorities, an upper riparian proprietor has no right, ordinarily, without permission, express or implied, to accelerate the flow or current of a natural watercourse or to increase the volume thereof, to the injury of a lower proprietor. This is true although there is no damage at the point where the stream enters the lower tract, but only further down. The rule has been applied where the acceleration is caused by deepening the channel or removing natural obstructions therefrom. * * *."

■ We believe there was sufficient evidence introduced from which a jury could infer defendant acted unreasonably in straightening the channel in such a way to harm plaintiffs.

■ V. This case is further complicated by the fact defendant Wilson's channelization project was within the jurisdiction of the Iowa Natural Resources Council. We recognize under Code chapter 455A the council is given the power to regulate flood plan projects. We upheld the statute against numerous constitutional attacks in *Iowa Natural Resources Council v. Van Zee*, 261 Iowa 1287, 158 N.W.2d 111. However, where the council, as here, has approved a project after the fact without giving notice as required by section 455A.19 and holding a hearing as required by section 455A.20, plaintiffs are not barred from instituting a separate damage suit. In any event, mere approval by a state administrative agency does not preclude judicial relief to a riparian owner where otherwise indicated by circumstances calling for invocation of the aforementioned principles. *Borough of Westville v. Whitney Home Builders*, 40 N.J.Super. 62, 84, 122 A.2d 233, 244.

Because there was sufficient evidence introduced on the liability issue, trial court erred in not submitting it to the jury.

VI. Plaintiffs also contend trial court erred in sustaining defendant's directed verdict motion on the ground they failed to introduce sufficient evidence to generate a jury question on the issue of proximate cause—causal connection.

■ Conduct to be a proximate cause of injury to another must be a substantial factor in bringing about the harm. *McCleeary v. Wirtz*, Iowa, 222 N.W.2d 409, 413; *Schnebly v. Baker*, Iowa, 217 N.W.2d 708, 729.

■ Proximate cause is usually a jury question. Rule 14(f) 10, R.App.P. A directed verdict may only be granted on the issue of proximate cause where the facts are clear and undisputed and relation to cause and effect so apparent to every candid mind that but one conclusion may be fairly drawn therefrom. Under such circumstances the question of proximate cause becomes one of law. *Berhow v. Kroack*, Iowa, 195 N.W.2d 379, 384, 385; *Boegel v. Morse*, 251 Iowa 1253, 1256, 104 N.W.2d 826, 828.

■ Of course, even though negligence may have been established, it does not necessarily follow that proximate cause exists; this question must be separately determined. *Northwestern Nat. Ins. v. Raid Quarries Corp.*, Iowa, 249 N.W.2d 640, 643; *DeYarman v. State*, Iowa, 226 N.W.2d 26, 28. Proof of the necessary causal connection may be by either direct or circumstantial evidence but in event the latter is used, it must be sufficient to make plaintiffs' theory asserted reasonably probable, not merely possible, and more probable than any other theory based on such evidence; however it is generally for the trier of fact to say whether circumstantial evidence meets this test. *Northwestern Nat. Ins. v. Raid Quarries Corp.*, supra, 249 N.W.2d at 643; *Wiley v. United Fire & Casualty Company*, Iowa, 220 N.W.2d 635; *Larkin v. Bierman*, Iowa, 213 N.W.2d 487, 488.

The evidence viewed in a light most favorable to the plaintiffs showed that although Black Hawk Creek overflowed resulting in flooding every year, there were undeniably increased sand and silt deposits accompanied by substantially more erosion damage after defendant's channelization project was completed. Both Donald Dirks and Robert Isenhower testified in this regard for Oak Leaf; Delbert Clark and Thomas Campbell did likewise for Reinbeck Farms. All agreed 1973 was the first year in which they observed the water coming through the creek with such an increased velocity that it was possible to see noticeable current flowing across the flooded properties. This was so even though there had been especially heavy rainfall in 1969. Defendant Wilson testified he noted no increased deposits in his own land and stated there was excessive rainfall in 1973 and 1974 as compared to previous years.

Al Austin, an assistant professor of Civil Engineering at Iowa State University, testified the straightening of the stream increased its velocity and resulted in a "geometric type progression" in erosion potential. He opined the erosion and other water damage sustained by plaintiffs was caused by defendant's project. Later in his cross-examination, Austin testified he was unable to affirmatively state this, the channelization, caused the damage.

■■■ Trial court was evidently persuaded to sustain defendant's motion on this ground for two reasons. First, Austin, as noted above, was unable to say absolutely the flood conditions would not have occurred absent the channelization project. However, the "probability" of causal connection necessary to generate a jury question need not come solely from one witness. "Probability" may be inferred by combining an expert's "possibility" testimony with nonexpert testimony that the described condition of which complaint is made did not exist before occurrence of those facts. *Becker v. D & E Distributing Co.,* supra, 247 N.W.2d at 730; *Winter v. Honeggers & Co.,* Iowa, 215 N.W.2d 316, 323. We believe when Austin's testimony is read together with the lay evidence offered, there was sufficient evidence to go to a jury.

■■■ Additionally, the fact there were inconsistencies in Austin's testimony is not determinative. The weight and credibility of testimony are matters for the jury. This rule applies even though there are contradictions or inconsistencies in the testimony of a particular witness. *Becker v. D & E Distributing Co.,* supra, 247 N.W.2d at 730; *Rehmann v. Balduchi,* Iowa, 169 N.W.2d 894, 896; *Houlahan v. Brockmeier,* 258 Iowa 1197, 1201, 141 N.W.2d 545, 548.

■■■ The second reason the trial court found insufficient evidence of proximate cause relates to apportionment of damages. Defendant successfully urged below that because plaintiffs were unable to precisely segregate the damages caused by the channelization project from the damages caused in a normal flood year, they were therefore barred from recovery. We disagree. The evidence from Messrs. Dirks, Isenhower, Clark, Cambell and Austin when read together indicates despite heavy flooding for years there had never been substantial erosion damage until defendant straightened Black Hawk Creek. Plaintiffs' failure to apportion the damage is not fatal to their cause.

■■■ Defendant's reliance on *Platter v. City of Des Moines,* 237 Iowa 348, 21 N.W.2d 787 is misplaced. It is factually distinguishable. Unlike *Platter,* there is evidence in this record which would enable the jury to form a reasonable estimate as to damage resulting from defendant's alleged violation of plaintiff's watercourse rights. Mere difficulty in ascertaining the amount of damages does not alone constitute a cause for denial of recovery. *Dealers Hobby, Inc. v. Marie Ann Linn Realty Co.,* Iowa, 255 N.W.2d 131, 134; *Basic Chemicals, Inc. v. Benson,* Iowa, 251 N.W.2d 220, 233.

VII. As we read the record, trial court also sustained defendant's motion for directed verdict on the ground that plaintiffs failed to introduce sufficient evidence to warrant submission of any claimed damage to the jury. After careful review of the record we believe trial court erred in this ruling.

Prefatorily, we note that plaintiffs were required to present evidence upon which an attendant monetary award could be granted. *Braverman v. Eicher,* Iowa, 238 N.W.2d 331, 336; *Ferrari v. Meeks,* Iowa, 181 N.W.2d 201, 206. While they were obliged to establish the amount of their respective damage claims with some reasonable degree of certainty, *Anderson v. Yearous,* Iowa, 249 N.W.2d 855, 864; *Conley v. Warne,* Iowa, 236 N.W.2d 682, 687, 688; *Earl v. Clark,* Iowa, 219 N.W.2d 487, 490, no mathematical precision was required. *Northup v. Miles Homes, Inc. of Iowa,* Iowa, 204 N.W.2d 850, 857; *Conrad v. Dorweiler,* Iowa, 189 N.W.2d 537, 540.

■■■ The usual measure of recovery for erosion damage is the difference in the fair

market value of the land immediately before and immediately after the injury. *Eppling v. Seuntjens,* 254 Iowa 396, 403, 117 N.W.2d 820, 825; *Grell v. Lumsden,* 206 Iowa 166, 169, 170, 220 N.W. 123, 125; *Mulverhill v. Thompson,* 122 Iowa 229, 230, 97 N.W. 1077; 25 C.J.S. Damages, § 84 at p. 920. However, where applicable, the proper measure of damages for loss of growing crops from water erosion is their value in the field at the time of injury in a matured condition less the reasonable expense of maturing and marketing. *Martin v. Jaekel,* Iowa, 188 N.W.2d 331, 335, 336; *Witthauer v. City of Council Bluffs,* 257 Iowa 493, 502, 133 N.W.2d 71, 77; *Eppling v. Seuntjens,* supra, 254 Iowa at 402, 117 N.W.2d at 824. Also see *Jefferis v. C. & N. Ry. Co.,* 147 Iowa 124, 124 N.W. 367.

■ In applying these rules to the case at bar, we conclude the court erred in holding there was inadequate evidence on damages. Donald Dirks, vice president of the Oak Leaf Country Club, testified as to the fair market value of the golf course both before and after defendant's project allegedly increased the erosion damage in both 1973 and 1974. The court admitted this testimony into evidence over defense objection. As to plaintiff Reinbeck Farms,

Delbert Clark, the farm manager, testified to both before and after market values of the damaged farm real estate. Although the court struck the "after values" at the close of cross-examination, this evidence was again admitted during Clark's redirect examination.

Of course, on retrial the measure of damages to be submitted will necessarily depend on the record made.

VIII. Although we agree with defendant that plaintiffs were required to introduce evidence showing the after effects of floods were different subsequent to the channelization project, it is our view sufficient evidence was produced to warrant submission of the case to the jury. Trial court erred in sustaining defendant's motion for directed verdict. Consequently, this case must be reversed and remanded for new trial.

**REVERSED AND REMANDED.**