145 N.W.2d 608 (1966)
STATE of Iowa, Appellee,
v.
Joanne RYE, Appellant.
No. 52088.
Supreme Court of Iowa.
October 18, 1966.
Rehearing Granted as to Div. IV, December 16, 1966.
*610 Gill & Huscher, Des Moines, for appellant.
Lawrence F. Scalise, Atty. Gen., Don E. Bennett, Asst. Atty. Gen., Raymond A. Fenton, County Atty. and Claude Freeman, Des Moines, Asst. County Atty., for appellee.
BECKER, Justice.
Defendant was convicted of larceny of property having a value in excess of $20 and was sentenced to five years imprisonment in the women's reformatory. She appeals the jury verdict and judgment on several grounds.
Two plain clothes detectives of the Des Moines police force were on duty in an unmarked police car Friday morning, August 6, 1965. They received a report from the police radio dispatcher that a black suit had been taken from Herman Kucharos Men's Store. The suspects were reported as two women, one wearing a blonde wig, who were reported to have gotten into a car driven by an unidentified third person. The license number was given to the officers. They knew the type of car they were to look for, the owner of the car and his address all from previous experience with the owner.
The officers found the car about 15 minutes later. They followed it to the owner's home where it pulled to the curb, coming almost to a complete stop. The car was being driven by a man and had two women passengers. As the unmarked police car pulled up, the car sped away at a high rate of speed. The officers followed. The car then stopped after being told to pull over. As the car was being followed after speeding away, the two women passengers were observed passing garments between them in what the officers described as an abnormal way. The garments were not in shopping bags or other containers.
When the car was stopped the officers approached it. The driver, Richard Evans, was asked why he was trying to get away. He shrugged his shoulders and said he didn't know. The officers could see into the car. Defendant was sitting in the rear on the passenger's side. She had a black purse in her lap that bulged, part of a garment was sticking out of the purse. The other lady also had a handbag with garments sticking out of it. A blonde wig was in defendant's lap. The officers also saw a suede coat with a mink collar on it which was between the two women and in defendant's hand. They also saw a white pillow case on the floor of the back seat between defendant's feet. No man's suit was seen at this time nor was any such suit ever found.
The occupants of the car were told to get out, that they were going to the police station for shoplifting. Other articles were found in the car coincidental to this arrest.
I. Defendant predicates several errors on the assertion that the arrest was illegal. This contention should be first examined. Defendant's position is that the arrest here was made and was actually complete when the car was ordered by the officers to stop and actually did stop in compliance with that order. The State does not concede this proposition but states that the point makes no difference as the officers had *611 sufficient information for a legal arrest both when they ordered the car to stop, and when they ordered the people out of the car.
We are not prepared to hold that every order to stop by a policeman to the driver of a moving vehicle, is, when obeyed, an arrest of all of the occupants of that vehicle. This problem has been examined in detail in several United States Supreme Court cases. A close look at the facts and the holdings indicate that the moment when arrest is made depends upon the facts of each case. The mere stopping of the car has been held to be an arrest only in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 where the government conceded that the act of waiving defendant's car to a stop constituted an arrest. The dissent notes that the government conceded too much. In any event the decision cannot be taken as a holding that every stopping of a motor vehicle is an arrest.
Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 involved an arrest of a passenger in a taxicab. The cab was stopped for a traffic light when the officers who had been following approached, one from each side of the cab. They saw defendant drop something to the floor of the car and saw that it was a white powder. The United States Supreme Court sent that case back for a determination by the District Court as to exactly when the arrest was made; i. e., when the officers were approaching the cab, or as the defendant was getting out. The actions of defendant, observed by the officers, were sufficient to support a finding of probable cause for the arrest if the arrest occurred after defendant alighted from the car. On remand the District Court (192 F.Supp. 888) held that the arrest did not occur until after the defendant got out of the cab.
Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 both involved illegal transportation of liquor; the first during the prohibition era, the second after repeal. Each evoked vigorous dissent. Each recognized that officers do not have an absolute right to stop automobiles for investigation on mere whim or mere suspicion. Each case, under the circumstances reviewed, found that the officers had probable cause to stop the vehicle and that the arrest occurred after other suspicious circumstances added additional reason for probable cause for the subsequent arrest.
Defendant relies heavily on Hobbs v. Illinois Cent. R. Co., 182 Iowa 316, 165 N.W. 912. That was a civil case for false arrest. There this court did hold that "There need not be an application of actual force, or such physical restraint as is visible to the naked eye." Submission by the arrestee to the custody of the person making the arrest is sufficient as to the latter element. It does not follow in all cases that an order by a police officer to "Stop" followed by compliance constitutes an arrest without more. We note that Hobbs did not determine the precise moment of arrest but merely stated that the arrest occurred "either upon the depot platform or in the depot * * *."
Under the circumstances shown here we hold that the actions of the officers in stopping the car in which defendant was riding were taken on probable cause, and the subsequent formal arrest after seeing the clothing in the automobile met the statutory requirement of Code, 1966, section 755.4(3); i. e., that the officers have reasonable ground to believe that an indictable public offense was committed and that the person to be arrested had committed it.
The fact that the initial cause for stopping defendant was the report of theft of a man's suit and that such a suit was never found, much less connected to defendant, does not vitiate the proceedings. In State v. Freeland, 255 Iowa 1334, 125 N.W.2d 825 the initial stopping was because the license plate was painted over *612 and there were recent breakins in the vicinity; in Henry v. United States, supra, the fact that officers were looking for stolen whiskey but found stolen radios was not determinative.
II. The state called two employees of Wolf's store to testify as to the garments offered in evidence. To summarize; they were both buyers, Ruth Gesland in sportswear and Beatrice Best in suits, coats and furs; they detailed the store's procedure as to pricing, inventory control, use of tickets on garments, sales by cash or by credit, use of cash register when sales were made and other details of the store's customary practices. Ruth Gesland testified that exhibits A, B, C and D all had three part perforated tickets on them. One part of the ticket is customarily torn off when the garment is sold. These tickets are checked daily as part of the inventory control. The third part was intact on all four items when recovered and in court. She had personally hung exhibit D on the rack at Wolf's at 9:30 the morning of the arrest. She also testified that she had checked the cash register. As to the gray three piece wool suit she was then allowed to state of her own personal knowledge that the dress had not been sold.
Beatrice Best testified that it was her responsibility to maintain inventory. That she had seen the mink fur in question the morning of the arrest and detailed the procedures in connection with recording the sale of such a fur. She then testified that she knew of her own knowledge that this fur had not been sold. The two witnesses testified as to the retail and wholesale prices of the various items. All prices exceeded $20. Total retail price of all items came to some $542.43.
Defendant strenuously objects to all of this testimony stating that the testimony as to inventory, sales tickets and marking procedure, bookkeeping and inventory control calls for the opinion and conclusion of the witness without proper foundation, that the best evidence is the records themselves, that the testimony assumed facts not in evidence and that it was hearsay as to defendant. As to the opinion and conclusion evidence in relation to company practices, the objections were clearly without merit. The foundation established these two witnesses as regular employees of Wolf's, their duties included the very practices and procedures outlined by the witnesses and their testimony established the fact that they were familiar with both the merchandise and the method of the store's handling of that merchandise.
The most serious objection by defendant goes to witness Gesland's answer to the following question.
"A. Of your own personal knowledge as buyer of this department and as a result of searching the records, do you know whether or not this particular garment Exhibit `D' was sold on August 6, 1965?"
Objection made by defense counsel.
"A. I do the unit control booksI check the cash register, the dress had not been sold."
A properly qualified witness may orally testify to a search of books or records and to the fact that such search fails to reflect a certain transaction. In Re Colton's Estate, 129 Iowa 542, 105 N.W. 1008, "We think the negative sought to be established may be proven like any other fact; that is, by one possessing the necessary information." Under the circumstances here it would not be necessary to produce the records of Wolf's. See also Cohen v. Boston Edison Co., 322 Mass. 239, 76 N.E.2d 766 and McCormick, Evidence, section 198, page 411.
Here the witness' knowledge of the merchandise and the pertinent records qualified her to testify to the negative fact that the item had not been sold. This was equally true of the fur buyer's testimony even though under a similar but different system of control, she did not testify to having *613 checked the cash register. The probative value of this testimony was for the jury.
III. Defendant also predicates error on the court's instruction No. 9 which told the jury that possession of property recently stolen is evidence from which an inference may be drawn that the person or persons in whose possession it is found are guilty of larceny thereof. Defendant argues that this instruction should not have been given because there was no evidence that the stolen property was in defendant's exclusive possession. Suffice to note that there was testimony from which the jury could find that Exhibits A and D were taken from defendant's purse and the mink stole was in a pillow case between defendant's feet. The evidence of possession was sufficient to justify the instruction.
Defendant requested no instructions amplifying instruction No. 9. The instruction as given adequately covers the subject in the absence of additional specific request for elaboration. See State v. Baker, 246 Iowa 215, 66 N.W.2d 303.
IV. Defendant's fourth area of complaint concerns the testimony of the officers as to certain statements and admissions made at the police station immediately after the arrest.
At the scene of the arrest defendant's companion informed the police that she didn't have to say anything and told defendant not to say anything. At the station all three parties were told that they didn't have to say anything and were asked if they had an attorney. At one point Detective Spencer said in answer to a question as to what he said when he advised the parties of their rights. "A. That they didn't have to tell us anything without counsel which they already knew." The latter portion was properly stricken as a conclusion.
On voir dire before trial on Motion to Suppress, Detective Thompson stated: "My advice as to their rights was substantially that they didn't have to say anything and asked them if they had an attorney. This was the advice given the defendants at the Detective Room at the table."
Detective Thompson's trial testimony was: "They were told they didn't have to tell us anything and they were also asked if they had an attorney. They said, `No'. They were asked if they wanted to tell us about these things. They proceeded to say they did get these things without paying for them."
The foregoing constitutes the State's record in connection with preinterrogation warnings. It is fatally insufficient. The testimony of the officers as to statements of the defendant, taken together could clearly be interpreted by the jury to constitute admissions that the defendant and her companion took the merchandise from Wolf's without paying for the articles. It is evident that the State intended that it be so interpreted.
In State v. Mabbitt, 257 Iowa 1063, 135 N.W.2d 525, the record affirmatively showed that defendant had been told of his right to remain silent, that anything he said might be used against him and of his right to counsel. We there held that defendant's constitutional rights had not been violated.
In State v. Tharp, 258 Iowa 224, 138 N.W.2d 78 there was affirmative evidence that defendant had been told of his right to remain silent and that he could have an attorney. Statements made thereafter were held admissible. The case was reversed on other grounds.
In State v. Leiss, Iowa, 140 N.W.2d 172 a majority of this court found defendant was advised "that he did not have to say anything, that he had a right to counsel, and that `what he would tell me could be used in court as evidence.'"
In State v. Myers, Iowa, 140 N.W.2d 891 an incriminating statement made while in the police car on the way to the station *614 was admitted in evidence. After arrival at the station defendant was advised of his right to counsel and his right to remain silent. A majority of this court upheld the conviction on the ground that the accusatory stage had not been reached. The opinion makes a vital distinction as to the type of purposeful questioning that might require a warning as a matter of constitutional right.
In State v. Miller, Iowa, 142 N.W.2d 394 the officers had "advised defendant of his constitutional right to a lawyer and his right to remain silent, and whatever he said could be used against him, * * *." There the question turned on the effectiveness of the warning in view of the fact that defendant argued that the officer knew defendant had no money to hire an attorney. The conviction was affirmed on the ground that effective warning had been given.
In State v. Holland, 258 Iowa 206, 138 N.W.2d 86, defendant was fully advised of his right to remain silent, that anything he said could be used against him and if he wanted a lawyer they would get him one. In that case we said: "We first consider whether receipt in evidence of defendant's admissions and confessions was error on the ground he was without counsel when they were made. If we assume, without so deciding, that defendant must first have been advised of his right to counsel without requesting one, in order to render his incriminating statements admissible, the evidence is almost conclusive that such advice was effectively and repeatedly given, was rejected and defendant intelligently waived any right he had to consult with counsel before voluntarily confessing the crime charged."
It will be noted that in the foregoing cases the State had substantial evidence that advice had been given of the right to counsel and that any statements made by defendant could be used in court against him. We now have the question squarely before us. Is a request for an attorney, or to consult an attorney, necessary before the protection of Amendment 6, can be invoked? No advice or warning re the right to counsel was given by the officers. There is no evidence upon which prior knowledge by defendant can be predicated and there is no affirmative evidence of a waiver unless it be taken from a silent record. To approve the procedure outlined here would be to base a waiver of right to counsel on the absence of request therefor. This we deem improper. We therefore hold that all statements made by defendant (and in this case by her companion in defendant's presence) are inadmissible as violative of defendant's rights under the Constitution of the United States, Amendment 6.
The federal cases compelling such conclusion have been discussed by this and other courts to the degree that they should only be noted as determinative.
The investigation had clearly focused on defendant. (Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 9 L.Ed.2d 977). At this stage of the proceedings defendant had a right to be represented by counsel.
Waiver of constitutional rights cannot be presumed from a silent record and failure to request counsel will not constitute a waiver. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, states: "We have held that the guarantees of the First Amendment, Gitlow v. [People of State of] New York, supra [268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138]; Cantwell v. [State of] Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213; Louisiana ex rel. Gremillion v. N.A.A.C.P., 366 U.S. 293, 81 S.Ct. 1333, 6 L.Ed.2d 301, the prohibition of unreasonable searches and seizures of the Fourth Amendment, Ker v. [State of] California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, and the right to counsel guaranteed by the Sixth Amendment, Gideon v. Wainwright, supra [372 U.S. 335, 9 L.Ed.2d 799], are all to be enforced against the States under the *615 Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment."
Defendant cites Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the Supreme Court of the United States held that Escobedo affects only cases tried after June 22, 1964, and Miranda affects only cases tried after June 13, 1966. This case was tried in November of 1965. Miranda does not apply but the other cases herein cited do apply. Defendant's motion for a new trial should have been sustained. Reversed and remanded for retrial.
LARSON, THORNTON, STUART, MASON and RAWLINGS, JJ., concur.
SNELL, J., GARFIELD, C. J., and MOORE, J., dissent.
SNELL, Justice (dissenting).
I respectfully dissent from Division IV of the majority opinion and from the reversal of the case.
In my opinion, neither the pronouncements of the Supreme Court of the United States nor anything we have ever said supports the conclusion of the majority.
This case was tried in November 1965 and defendant was sentenced November 29, 1965.
The guidelines promulgated by the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided June 13, 1966, operate prospectively only and do not apply here. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, and Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895, both decided June 20, 1966.
In the case before us there is not the slightest suggestion of any force, prolonged questioning, pressure, deceit, subterfuge, coercion, threats, promises or even persuasion. There was no denial of any right.
It is undisputed in the record that defendant was repeatedly advised that she "didn't have to say anything." Defendant and her companion "were asked if they wanted to tell us about these things." The officers testified as to what was then said. The statements of defendant as reported were voluntary and in my opinion were admissible.
I would affirm.
GARFIELD, C. J., and MOORE, J., join in this dissent.