**STATE of Iowa, Appellee,**

v.

**James BROWN and Benny Earl Hudson, Appellants.**

**No. 52523.**

Supreme Court of Iowa.

Jan. 9, 1968.

John P. Roehrick, Des Moines, for appellants.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and Ray A. Fenton, County Atty., Des Moines, for appellee.

BECKER, Justice.

Defendants were indicted for robbery with aggravation, tried by a jury and convicted. They appeal on several grounds. We affirm.

There is little factual dispute in this record. Defendants took the stand and admitted their participation in the robbery. They stated the guns they used were not loaded, they did not display them, and they intended no violence. This appears to have been a calculated effort to secure conviction for robbery, a ten year offense, in lieu of robbery with aggravation, a twenty-five year offense. Defendants were found guilty of the more serious charge.

The robbery occurred at the Hy-Vee food store at Johnston, Iowa at about 9:00 P.M. on August 19, 1966. Defendants entered the store unmasked. When an employee attempted to help defendant Brown at one of the counters, he told her to pick up .a sack and empty the money from the cash register into it. She looked down and saw the barrel of a gun. Brown then took her over to the next register and repeated the process. The safe was opened by one of the employees and the contents taken. Defendant Hudson stood along the wall. He also had a gun. The men ordered the three employees and one customer to lie down on the floor and left. All four witnesses related the same story. All four identified both defendants. The money taken amounted to just over $5,000 plus checks.

I. Defendants first assign error for admission of evidence obtained by illegal search and seizure incident to an illegal arrest made without probable cause and without warrant. Therefore defendants' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States were violated.

In several recent cases we have considered the rules involving probable cause for arrest without warrant, and searches incident thereto. State v. Anderson, 260 Iowa 122, 148 N.W.2d 414; State v. Rye, Iowa, 145 N.W.2d 608; State v. Polton, 259 Iowa 435, 143 N.W.2d 307; State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444. We shall not again review the numerous state and federal authorities on the subject. We review this matter with those cases in mind and under the general statement in Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (October 15, 1964).

" 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officer's whim or caprice.'

Brinegar v. United States, supra, 338 U.S. [160] at 176, 69 S.Ct. [1302] at 1311, 93 L.Ed. 1879."

The facts concerning the arrest are simple. Three officers each in a separate radio equipped patrol car participated. Each heard the dispatch telling of an armed robbery near their area at Johnston, and the announcement that a white Buick bearing Texas license plates FDB760 was a wanted car.

Patrolman Brown, going north on Interstate 35, saw a car going south he thought worth investigating. He followed it and radioed the other two officers he was following a white Buick bearing the indicated license plates. A road block was arranged.

The actual stopping involved what the officers interpreted as an effort to get around the block but the patrol cars were so maneuvered as to thwart any such effort. When the car was stopped the officers had to shout several times before the occupants got out of the car. At this point all three patrolmen were covering the car with shotguns.

When the four occupants, defendants and two women, got out of the car patrolman Aringdale immediately went to the vehicle, put his hand under the front seat and felt what he thought was a revolver butt. He told the occupants they were under arrest. Patrolman Petersen went over to the car as officer Aringdale left it, directed his light through the window onto the floor in back and saw a Remington automatic pistol and a money bag. He removed the articles and was told there was a revolver under the front seat. He removed that too. Both guns were loaded.

The car was more thoroughly searched after a search warrant was obtained. A woman's handbag containing approximately $5,000 and checks identified as connected with the robbed store were found in the Buick.

■ Defendants argue a search does not change character from its success. State v.

Hagen, 258 Iowa 196, 137 N.W.2d 895. The State does not attempt to justify this stopping, search and subsequent formal arrest by the fruits of the search. The officers stopped a well identified "wanted" car shortly after hearing the radioed information concerning the car and an armed robbery in the near vicinity. The officers acted on probable cause. Both the arrest and search were reasonable. The circumstances are not unlike those in State v. Dwinells, 259 Iowa 945, 146 N.W.2d 231, where we said it is probable the facts would justify the search but decided the case on the question of waiver.

Defendants cite Patenotte v. United States, 266 F.2d 647 (5th Cir.) where five factors were listed as relevant to determine probable cause to stop an automobile. We do not find the listing of five factors persuasive here. The test is more accurately stated in State v. Anderson, 260 Iowa 122, 148 N.W.2d 414, 417. "It has been repeatedly held that what is a reasonable search depends upon the facts and circumstances of each case. (cases cited) The test of reasonableness is not to be stated in rigid and absolute terms nor by any fixed formula. Arwine v. Bannan [6 Cir., 346 F.2d 458] supra."

II. Defendants have formally waived their second assignment of error. Their present attorney was appointed to prosecute this appeal. The transcript and the record were silent on the availability of a lawyer for defendants from August 19 to September 22 (the date of arraignment). Newly appointed appellate counsel included this lack of representation as an important point on appeal. Subsequently by affidavit, Martin R. Dunn, the attorney who tried the case, certified he had been representing defendants since August 22nd. The point has therefore been abandoned.

■ III. Defendants also contend they were interrogated without counsel and without adequate warning on the night of the arrest.

Patrolman Petersen stated that defendant Hudson was placed in his patrol car to be taken to the court house at Osceola. On the way Hudson asked: "How did you all get onto us so quick?" Petersen said that he had not even asked Hudson his name at that point and had replied, "Look, I'm not asking you any questions. You don't ask me any." Hudson then said, "Well, I know all about that, but how did you all get onto us so quickly?" Petersen testified he then renewed the warning given out on the highway that anything Hudson said could be used against him. About that time they got to the court house.

Hudson's statements were clearly volunteered and do not come within the prohibitions in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

 The other area of admissions concerned the testimony of deputy sheriff Tharp who was present the night of the arrest when defendants were being questioned by the county attorney. Tharp stated: "They (defendants) were advised that they had a right to remain silent, that anything they said could and would be used against them in court, that they had a right to counsel, and that if they were without funds, and so forth, that the county would provide them with counsel. * * * He advised them they could have an attorney present at this time of questioning." Tharp also testified Hudson admitted being involved in a robbery and said the women were not involved. Brown made no statement at all. Deputy Sheriff Lewis testified to like effect but was not asked whether the Miranda type warnings had been given.

We have no doubt that defendants were properly apprised of their rights. In addition defendants made no objection to any of testimony noted in this section. Each defendant took the stand and admitted his participation in the robbery. The only portion of the State's case they denied was that the guns were loaded or that they had an intent to use them. This was a definite,

reasonable trial plan to avoid the extra punishment associated with robbery with aggravation. Defendants cannot complain of the evidence of Hudson's statements to which no objection was made. Failure to object was clearly part of the trial tactics. This procedure constituted a waiver. State v. Dwinells, 259 Iowa 945, 146 N.W.2d 231.

■ IV. Defendants also assert delay of warning from time of arrest to time of county attorney's warning later the same night bars all prosecution. "Any statements made could not have but enabled the state to insure a conviction and a more adequately prepared case, at the expense of the appellants' right to remain silent." If evidence has been illegally obtained the remedy is the exclusion of such evidence, ordinarily it does not result in barring the prosecution altogether. United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510.

Affirmed.

All Justices concur.