In the Interest of George THOMPSON, a child, Appellant.

No. 3–58727.

Supreme Court of Iowa.

April 14, 1976.

L. Vern Robinson, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Stephen C. Robinson, Special Asst. Atty. Gen., Theodore R. Boecker, Asst. Atty. Gen., and Daniel L. Bray, Asst. County Atty., for appellee.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Seventeen-year old Thompson was adjudicated a delinquent under § 232.2(12)(a), The Code, for breaking and entering a business establishment in Iowa City. Upon this appeal which raises issues concerning the validity of Thompson's oral confessions and the permissible scope of his cross-examination under § 781.13, The Code, we affirm.

At 2:30 A.M. September 3, 1975, Iowa City police received a telephone report from an individual who heard breaking glass or metal indicating a breakin at Blackstone Beauty Shop. Several officers hurried to the scene in police cars. Officer Saylor observed Thompson and two other juveniles emerging from an alley. Located in the alley was the beauty shop back door which had been broken.

At some later point in the investigation a police search of the alley disclosed in a recessed doorway of a nearby building a television stolen from the beauty shop, and the tools apparently used to force the beauty shop door.

The officers took the juveniles to the police station and began questioning them together about why they were out so late. According to officer Saylor, the police thought the boys could have been involved in the breakin but had asked no questions concerning it when one of the three, Ambrisco, said "We did it." The officers responded: "Did what?" to which he replied "We broke into it." Saylor ambiguously testified Thompson agreed by gestures, and words he could not recall, but he did recollect Thompson volunteering, following Ambrisco's admission, that the three of them were together.

The juveniles were then read their constitutional rights from the standard form. Thompson signed a waiver of his rights. Sometime between 4:00 and 5:00 A.M. officer Saylor brought Thompson from his cell to the interrogation room and again advised him of his rights. Thompson then related the "whole story" of the breakin.

Shortly after 8:00 A.M. detective Burns, who was fingerprinting and photographing the juveniles, again advised Thompson of his rights. The latter verbally waived these rights and again confessed his involvement in the crime.

Upon cross-examination officer Saylor was asked if Thompson made a request for someone to represent him. Saylor responded, "I don't know if he was—they were asked if they had attorneys and Mr. Thompson said you [attorney Robinson] were his

attorney and I believe detective Kidwell said that, who had evidently been involved with him before, said he knew you were his attorney and that is how you came into play, that is the extent of the mention of legal counsel."

Thompson testified the officers refused his request to call attorney Robinson, who had represented him in a prior proceeding. Cross-examined concerning his written waiver of statutory § 755.17 communication rights, Thompson replied, "Well, I believe he—okay, that paper—he [Kidwell] said I could call my lawyer so I asked if I could call him and he said 'Well, you can call him in the morning, I sure as hell'—excuse that —'I'm not going to wake him up at three in the morning just to come down here and talk to you about this.'"

Other evidence bearing on Thompson's background, mental ability, education and personal characteristics will be discussed, infra.

### I. *Scope of Review.*

The juvenile's brief requests us to hold the confession invalid and remand the cause to district court for retrial excluding the confession.

■ However, our review is *de novo.* Section 232.58, The Code; *In Interest of Meek*, 236 N.W.2d 284, 289 (Iowa 1975); *In re Henderson*, 199 N.W.2d 111, 116, 124 (Iowa 1972). We formerly held when a delinquency charge is based on an alleged public offense, due process requires proof beyond reasonable doubt. *In Interest of Potter*, 237 N.W.2d 461 (Iowa 1976); see *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368, 377–378 (1970); *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527, 538 (1967). This evidentiary standard now applies in every delinquency proceeding. Laws 66 G.A., Ch. 142 § 5. Thus if in our *de novo* review admissible evidence satisfies the reasonable doubt standard we need not reverse. *In Interest of Wheeler*, 229 N.W.2d 241, 243–244 (Iowa 1975).

II. *Validity of the confession.*

Thompson launches a two-pronged attack on the validity of his confession. He first argues for adoption of a rule that a minor should be held incapable of voluntarily and knowingly waiving his right to remain silent in absence of a parent, adult friend, or lawyer. As a second argument he insists the totality of the circumstances surrounding the confession demonstrates it was involuntarily obtained.

The *per se* exclusionary rule Thompson first contends for has a logical appeal. The legal safeguards the law provides minors in most civil matters, see *Shearer v. Perry Community Sch. Dist.*, 236 N.W.2d 688, 697–699 (Iowa 1975) (Reynoldson, J., dissenting), have no counterparts in the criminal law surrounding confessions, where liberty is at stake. It is anomalous that a minor who is civilly *non sui juris* may nonetheless be held to have waived his constitutional rights in a proceeding affecting his personal freedom.

Two closely related but distinct arguments have been made by those seeking to impose a *per se* exclusion of juvenile confessions. One argument is that a juvenile's confession should be inadmissible if the police did not obtain the *consent* of a parent or guardian to the juvenile's waiver of rights. This argument has been rejected in *People v. Lara,* 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967), cert. denied, 392 U.S. 945, 88 S.Ct. 2303, 20 L.Ed.2d 1407 (1968); *State v. Oliver,* 160 Conn. 85, 94, 273 A.2d 867, 871 (1970), cert. denied, 402 U.S. 946, 91 S.Ct. 1637, 29 L.Ed.2d 115 (1971); and *People v. Stephen J. B.,* 23 N.Y.2d 611, 616–617, 298 N.Y.S.2d 489, 495, 246 N.E.2d 344, 348–349 (1969).

Another argument, made here, is that a juvenile's confession given without presence of or opportunity to *consult with* a parent, adult friend or lawyer should be inadmissible *per se.* This theory, too, has been almost unanimously rejected. See *People v. Pierre,* 114 Ill.App.2d 283, 291, 252 N.E.2d 706, 710 (1969), cert. denied, 400 U.S. 854, 91 S.Ct. 71, 27 L.Ed.2d 92 (1970); *State v. Melanson,* 259 So.2d 609, 611 (La.App.1972);

*State v. Hogan,* 297 Minn. 430, 440, 212 N.W.2d 664, 671 (1973); *State v. Carder,* 3 Ohio App.2d 381, 389, 210 N.E.2d 714, 719 (1965), aff'd, 9 Ohio St.2d 1, 222 N.E.2d 620 (1966); *State v. Raiford,* 7 Or.App. 202, 490 P.2d 206 (1971); *Commonwealth v. Moses,* 446 Pa. 350, 354, 287 A.2d 131, 133 (1971); *Theriault v. State,* 66 Wis.2d 33, 38, 223 N.W.2d 850, 852 (1974); *Mullin v. State,* 505 P.2d 305, 309 (Wyo.), cert. denied, 414 U.S. 940, 94 S.Ct. 245, 38 L.Ed.2d 166 (1973). But see Council of Judges of the National Council on Crime and Delinquency, Model Rules for Juvenile Courts, Rule 25, p. 53 (1969).

Although the *per se* rule has received almost unanimous support from commentators, e. g., Ferguson & Douglas, *A Study of Juvenile Waiver,* 7 San Diego L.Rev. 39 (1970); Note, *Waiver in the Juvenile Court,* 68 Col.L.Rev. 1149, 1163–1164 (1968), it has been adopted in only two decisions and a few statutes. See *In re K.W.B.,* 500 S.W.2d 275, 283 (Mo.Ct.App.1973); *Lewis v. State,* 259 Ind. 431, 439, 288 N.E.2d 138, 142 (1972); General Statutes of Connecticut § 17–66d (1975); 10 Oklahoma Statutes Annot. § 1109 (Supp.1975–1976).

It is apparent most courts, required to deal pragmatically with an ever-mounting crime wave in which minors play a disproportionate role, have considered society's self-preservation interest in rejecting a blanket exclusion for juvenile confessions. *People v. Lara, supra,* see *Cotton v. United States,* 446 F.2d 107, 110 (8 Cir. 1971); *United States v. Ramsey,* 367 F.Supp. 1307, 1312 (W.D.Mo.1973). An analogous public policy consideration probably foundations the tort rule that a minor's conduct is to be measured by adult standards of care when the child has engaged in what is usually considered an adult activity, such as flying an airplane or driving an auto. See *Rosenau v. City of Estherville,* 199 N.W.2d 125, 129 (Iowa 1972); W. Prosser, Law of Torts § 32, pp. 156–157 (4th ed. 1971); 2 Restatement (Second) Torts § 283A, Comment c. at 16.

We find almost all decisions apply to both adults and minors the same "totality of

surrounding circumstances" test for determining a confession's voluntariness, but weigh heavily in the balance the facts of minority and failure to provide consultation with a parent, guardian, custodian, adult friend or lawyer. See, e. g., *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); *Commonwealth v. Cain,* 361 Mass. 224, 279 N.E.2d 706, 709 (1972).

In *State v. Fetters,* 202 N.W.2d 84, 88 (Iowa 1972), we adopted the rule approved by *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–627, 30 L.Ed.2d 618, 627 (1972) requiring the prosecution to prove voluntariness of a confession by a preponderance of the evidence. In the same decision, 202 N.W.2d at 89, we held proof *Miranda* warnings were given did not obviate the prosecution's burden to establish the accused voluntarily, knowingly and intelligently waived his right to remain silent and his right to assistance of counsel.

The *per se* exclusionary rule was rejected by the Iowa court in *State v. Kelley,* 253 Iowa 1314, 1324, 115 N.W.2d 184, 190 (1962), although the case loses precedential value because minority then existed to age 21 and Kelley was 20 years of age. Taking into consideration the factors discussed above and the overwhelming weight of case authority, we again decline to adopt the concept every minor is incompetent as a matter of law to waive his rights to remain silent and to an attorney. At the same time, we emphasize the importance of securing for the minor under interrogation the advice and consultation of a parent, guardian, custodian, adult friend, or lawyer. See § 232.16, The Code. Failure to provide such support will throw a deep shadow of judicial distrust over the resulting confession. See *Gault,* supra, 387 U.S. at 48, 55, 87 S.Ct. at 1454, 1458, 18 L.Ed.2d at 557, 561.

Turning to the question whether Thompson's confession was voluntary, we consider two distinct factors. The first is the effect of his request for counsel and its denial. The second is Thompson's personal characteristics and their cumulative effect on his ability to waive constitutional rights.

We start from the premise that courts indulge every reasonable presumption against waiver of constitutional rights. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). We then consider applicability of two principles laid down in *Miranda v. Arizona,* 384 U.S. 436, 474–475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 723–724 (1966):

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. * * *

\* \* \* \* \* \*

If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."

See *United States v. Clark,* 499 F.2d 802, 807 (4 Cir. 1974); *State v. Holderness,* 191 N.W.2d 642, 646–647 (Iowa 1971); *State v. Moon,* 183 N.W.2d 644, 647 (Iowa 1971).

Factors which ordinarily play a role in determining the issue of the voluntariness of a confession, in addition to the youth of the accused and his opportunity to consult with a parent, guardian, custodian, adult friend or lawyer (see *West v. United States,* 399 F.2d 467, 469 [5 Cir. 1968], cert. denied, 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795 [1969]) are summarized in *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973):

" * * * his lack of education, e. g., *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975; or his low intelligence, e. g., *Fikes v. Alabama,* 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; the lack of any advice to the accused of his constitutional rights, e. g., *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; the length of detention, e. g., *Chambers v. Florida,* supra [309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716,]; the

repeated and prolonged nature of the questioning, e. g., *Ashcraft v. Tennessee*, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; and the use of physical punishment such as the deprivation of food or sleep, e. g., *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948."

With these standards in mind, we have already noted Thompson was only seventeen. The record reflects he was virtually abandoned by his parents at an early age. Most of the four prior years were spent at the Mount Pleasant Mental Health Center. Before that he was in various institutions and placement situations.

In the spring of 1975 Thompson was, according to an April 1975 social investigation work-up, "sleeping occasionally at the Lutheran Social Services' Boys' Group Home, camping out occasionally, and has been calling attention to himself in the community with misbehavior * * *."

Accompanying psychological and psychiatric reports from 1973 show him to have a full scale I.Q. of only 71. It was observed Thompson's "practical judgment is *very* low." He has an abnormal electroencephalogram with "two highly significant signs of brain damage and six significant signs." He was able to read at a fourth-grade level. Tests indicated he was frightened, insecure and frustrated. In addition to the abnormal electroencephalogram the diagnosis included "passive aggressive behavior" and borderline mental retardation.

While a confession will not be excluded on the sole ground of mental weakness unless the abnormality deprives the accused of the capacity to understand the meaning and effect of the confession, *State v. Winfrey*, 221 N.W.2d 269, 273 (Iowa 1974); *State v. Conner*, 241 N.W.2d 447 (Iowa, filed April 14, 1976), this combination of mental weakness, emotional instability and judgmental incapacity bears heavily on the ultimate decision.

It is true Thompson was advised of his constitutional rights. This, as we have above observed, does not terminate the State's burden to prove the confession was voluntary. It is also true Thompson testified in cross-examination he knew he had a right to talk to a lawyer before he answered any questions. But on this record we find he was denied that right. Thompson's testimony detective Kidwell refused to call attorney Robinson rings true. The State did not call Kidwell as a witness, nor was there any showing he was unavailable. A juvenile with Thompson's characteristics should not be expected to persistently, repeatedly and articulately invoke his constitutional rights before they will be recognized. See *United States v. Blocker*, 354 F.Supp. 1195, 1199–1200 (D.C.D.C.1973).

The importance of counsel reaches beyond merely advising a client he is not required to answer questions. The requirement of "knowing and intelligent waiver" implies a rational choice based upon some appreciation of the consequences of the decision. *Cooper v. Griffin*, 455 F.2d 1142, 1146 (5 Cir. 1972). The lawyer whom Thompson wanted to call could have advised him concerning probable consequences of confessing.

The record does not reflect Thompson was provided any food. He was obviously without sleep. These factors are also to be weighed in the balance.

Finally, and crucially important, we observe this juvenile's verbal confessions were secured absent any consultation with a parent, guardian, custodian, adult friend or lawyer.

Thompson's interrogation should have ceased when he requested his lawyer be called. Viewing the evidence in the light most favorable to the prosecution, the State did not carry its subsequent heavy burden of proof to show Thompson subsequently waived either his privilege against self-incrimination or his right to counsel. *Miranda*, supra.

Considering the totality of the surrounding circumstances, including failure to provide him requested counsel, we hold Thompson's verbal confessions are involuntary. They should not have been considered below and will not be considered here.

**8**

■ This does not apply, however, to Thompson's spontaneous statement made prior to any direct interrogation by the officers concerning the breakin. Such statements are not within the *Miranda* prohibitions, *State v. Brown,* 176 N.W.2d 180, 182–183 (Iowa 1970), even though the accused is in custody. See *State v. Brown,* 261 Iowa 656, 659–660, 155 N.W.2d 416, 418–419 (1968).

III. *Application of § 781.13, The Code.*

■ Thompson argues he took the stand for the very limited purpose of testifying he requested counsel, but the prosecutor, over his objection, was not "strictly confined therein to the matters testified to in the examination in chief." Section 781.13, The Code; see *State v. Jensen,* 189 N.W.2d 919, 923–924 (Iowa 1971).

Although the cases cited in division I recognize the criminal nature of a juvenile proceeding based on commission of a statutory offense, we are not required here to determine whether Thompson in a juvenile proceeding should be afforded the § 781.13 protection he would receive if tried in criminal court. We think the trial court did not permit the cross-examination to stray beyond the § 781.13 perimeters. We find no merit in this contention.

IV. *De novo disposition.*

■ There is left, as we indicated in division I, the issue whether sufficient admissible evidence remains to satisfy the applicable reasonable doubt standard. *In Interest of Wheeler,* supra.

Thompson was observed at 2:30 A.M., very shortly after a report of breaking glass or metal, coming out of an alley with two juveniles. At the other end of the alley a door had been forced. In the alley were found the stolen television and breakin tools.

After eliminating consideration of Thompson's confessions, the record reflects his prior spontaneous statement, following Ambrisco's utterance "We broke into it," that the three juveniles were together. Of course Ambrisco's out-of-court admission,

standing alone, would be hearsay as to Thompson. But the latter's overt utterance, which is reasonably interpreted as adding to the admission, may be considered and does not fall within the prohibition of our tacit admission exclusionary rule. See *State v. Kelsey,* 201 N.W.2d 921, 927 (Iowa 1972).

In our *de novo* review we find sufficient evidence to prove beyond reasonable doubt Thompson was a participant in the breakin. Trial court's adjudication of delinquency and its disposition of the case (commitment to state department of social services with recommendation for placement in Iowa Training School for Boys) are affirmed.

AFFIRMED.